**In the Interest of K. D. R., a child.**

**No. 1538.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 22, 1979.

Rehearing Denied Nov. 29, 1979.

John C. Augustine, Minton, Burton & Fitzgerald, Austin, for appellant.

W. W. Kilgore, Juan Velasquez, III, Kilgore, Cole & McManus, Victoria, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment rendered in a child custody case pursuant to an instructed verdict. Lloyd Donald Stewart and Mary Jane Stewart were plaintiffs in the trial court and appellants in this Court, and Margaret Suzanne Rouse Baruday was defendant in the trial court and is appellee in this Court. Judgment was rendered that the plaintiffs take nothing by their suit. The parties will be designated as "plaintiffs" and "defendant" as they were in the trial court.

Since this is a suit to determine custody of a child, the paramount issue is the best interest of the child. Tex.Family Code Ann. § 14.07(a) [1975]; *Herrera v. Herrera,* 409 S.W.2d 395 (Tex.Sup.1966); *Ex Parte Gallop,* 486 S.W.2d 836 (Tex.Civ.App.— Beaumont 1972, writ ref'd n. r. e.); *Tye v. Tye,* 532 S.W.2d 124 (Tex.Civ.App.—Corpus Christi 1975, no writ).

In determining whether the trial court was correct in instructing a verdict, we are required to review the evidence most favorable to the losing parties in the trial court, to indulge against the judgment every inference that may be drawn from the evidence and to disregard all contrary evidence thereto. *Seideneck v. Cal. Bayreuther Associates,* 451 S.W.2d 752 (Tex. Sup.1970); *State Highway Department v. Hinson,* 517 S.W.2d 308 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). If, after having viewed the evidence in accordance with the above rule, the evidence has any force of probative value, an issue of

fact is raised and we must hold that the instructed verdict was improper. *White v. White,* 141 Tex. 328, 172 S.W.2d 295 (1943); *Jay-Lor Textiles v. Pacific Compress Warehouse,* 547 S.W.2d 738 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.).

In the case at bar, the plaintiffs filed a petition for termination of the parent-child relationship between the defendant and the minor child, K. D. R., and for the adoption of said child, hereinafter called "the child." It was alleged therein that the child was illegitimate and that "no father or probable father is known" to petitioners. Thereafter, the plaintiffs filed their first amended petition, wherein they abandoned their pleading to terminate the existing parent-child relationship and for adoption of the child, and asked that they be named managing conservators of the child on the ground that it would be in the best interest of the child to so appoint them. No exception was leveled at any allegation contained in the plaintiffs' first amended original petition, their trial pleading.

Subsequently the trial court appointed a Guardian Ad Litem for the child to represent the interest of the child. The Guardian Ad Litem represented the child at the trial of this case and here on appeal.

Trial was to a jury. After the plaintiffs presented evidence and closed, and before the defendant presented any evidence, the trial judge announced that he would entertain a motion on behalf of the defendant for an instructed verdict. Counsel for the defendant then moved for an instructed verdict, which was granted, and a take nothing judgment was rendered.

The plaintiffs are husband and wife. The plaintiff Mary Jane Stewart is the maternal grandparent of the child and is also the biological mother of the defendant, who was born to plaintiff Mary Jane Stewart and her first husband, Robert Junior Russell.

The child was born on August 19, 1975, and is the third illegitimate child born to the defendant. The other two illegitimate children, a boy and a girl, age 8 and 6, respectively, at the time of trial, have been adopted by the plaintiffs and were living with them at all times pertinent to this appeal. About six weeks after the child's birth, the defendant appeared at plaintiffs' door with the child's clothes in her arms and stated: "Here are her things. You can have her. You keep her. I cannot raise her." From that date until about March, 1978, the plaintiffs raised the child as their own child in their home. The defendant made no effort to provide any support for her child and only occasionally came to visit her. In March, 1978, when the child was about 2½ years old, the defendant took her out of the plaintiffs' home because of an unrelated family dispute. The child was living with the defendant at the time of trial.

There is abundant evidence in the record that subsequent to the taking of the child by the defendant from plaintiffs' home, and while the child was in the defendant's exclusive custody, the child was physically abused by someone. We do not deem it necessary to set out such evidence in detail. Suffice it to say that the witnesses called by the plaintiffs testified that, on several occasions, the child bore visible bruises on her forehead, cheeks, in the middle of her back, and on her legs. There was evidence from which the jury could have concluded that the bruises were caused by pinching, by striking the child with a stick and by hitting her with a belt. A doctor examined her and found three abrasions "two and a half inches wide and three inches long" on her thighs. He voiced an opinion that the child was a victim of child abuse and made such a report to the Children's Services. Two weeks later, he again examined the child and found "some abrasions which were different from those I have (sic) seen on the previous visit."

On the other hand, the evidence shows that the plaintiffs owned a nice, three-bedroom house; that the house was kept in a good, clean condition; that the family atmosphere in plaintiffs' home was conducive towards the proper raising of children; that the child had a happy and close relationship with plaintiffs and with her halfbrother

and halfsister. Plaintiff Mary Jane Stewart testified that it would be in the best interest of the child if plaintiffs were named managing conservators for her.

 Concerning the matter of the instructed verdict, after the plaintiffs had closed, the trial judge, in open court, announced:

" . . . The plaintiff, having rested, the Court has reviewed the pleadings and the file, and is of the opinion that there is (sic) no disputed issues to be determined by the jury, and that there is (sic) no pleadings to support a termination of parental authority, and the State is not a party to the lawsuit seeking to terminate parental authority and, therefore, the Court will entertain a motion for instructed verdict."

Whereupon, counsel for the defendant said: "At this time, on behalf of my client, we make a motion for instructed verdict, your Honor."

The trial court erred in instructing a verdict on the ground that there were "no pleadings to support a termination of parental authority." The Texas Family Code does not require the termination of parental rights before a person who is not a parent of the child in question can be appointed managing conservator. We have not found a single case which holds that a person who is not the parent of the child in question cannot get custody of the child, without there being a termination of the parent-child relationship first obtained. There is a marked distinction between a suit for conservatorship and a suit for termination of the parent-child relationship. See *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.Sup.1976); *Brokenleg v. Butts*, 559 S.W.2d 853 (Tex. Civ.App.—El Paso 1977, writ ref'd n. r. e.). A person who is not a parent of the child involved can be appointed managing conservator without there being a termination of the parent-child relationship.

 The trial court also erred in instructing a verdict for the defendant on the ground that "the State is not a party to the lawsuit." There is no such requirement in Texas law.

 The trial court further erred in instructing a verdict for the defendant on the ground that there were no disputed fact issues to be determined by the jury. We have read the statement of facts in its entirety. Following the well established rules for the disposition of an appeal where the trial court instructed a verdict, it is our opinion that in this case there was ample evidence raising fact issues for jury determination. It was, therefore, reversible error to instruct the jury to return a verdict for plaintiffs and to grant a take nothing judgment. The judgment of the trial court is reversed and the cause is remanded to the trial court for a new trial.

REVERSED AND REMANDED.