**FIRST VICTORIA NATIONAL BANK, Appellant,**

v.

**Geronimo BRIONES, Appellee.**

No. 13–89–003–CV.

Court of Appeals of Texas,
Corpus Christi.

April 5, 1990.

Rehearing Overruled May 3, 1990.

Michael Meier, Kelly, Stephenson & Marr, Victoria, for appellant.

John Griffin, Jr., Houston, Marek & Griffin, Victoria, David C. Griffin, Houston, Marek & Griffin, Port Lavaca, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is an action for breach of contract. Charles Waters, Jr., and his wife, Pearl, executed a "MECHANIC'S LIEN NOTE" in the amount of $20,000.00 to appellee, Geronimo Briones. This note is secured by a mechanic's lien by virtue of a mechanic's lien contract. The contract required Briones to construct improvements on the Waters' property. Pursuant to a "TRI-PARTY FINANCING AGREEMENT," Briones requested appellant, First Victoria National Bank, to purchase the indebtedness owing under the contract together with the lien and security interest securing the payment thereof and to make a purchase money loan to the Waters to finance his cost for the improvements. The Bank agreed to these requests, subject to certain conditions. Briones, however, received only $14,000.00 out of the $20,000.00 loan and brought suit against the Bank for the remaining $6,000.00. The Bank filed a counterclaim, seeking indemnification from Briones for sums to which he may show that he is entitled to under the contract. After presentation of the evidence, both parties moved for instructed verdicts. The trial court instructed a verdict favorable to Briones for the $6,000.00. The Bank appeals.

By points of error one through four, six and seven, the Bank complains the trial court erred in instructing a verdict favorable to Briones. Specifically in point one, the Bank complains that the trial court erred in instructing a verdict favorable to Briones because the "TRI-PARTY FINANCING AGREEMENT" did not require the Bank to pay the entire amount of the loan ($20,000.00) to Briones for his work. We agree.

In determining whether the trial court correctly instructed a verdict, we are required to review the evidence most favorable to the losing parties in the trial court, to indulge against the judgment every inference that may be drawn from the evidence and to disregard all contrary evidence thereto. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 753 (Tex.1970); *In re K.D.R.,* 590 S.W.2d 176, 177 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). If, after having viewed the evidence in accordance with this rule, the evidence has any force of probative value, an issue of fact is raised and we must hold that the instructed verdict was improper. *White v. White,* 141 Tex. 328, 172 S.W.2d 295, 296 (1943); *In re K.D.R.,* 590 S.W.2d at 177-78.

The evidence shows that Charles Waters informed the Bank that he wished to borrow $15,000.00 for a home improvement loan. He also told the Bank that he owed delinquent taxes on the property to be improved. The Bank advised Waters to obtain a bid for the improvements, and he acquired one from Briones for $19,817.00. Waters, however, told the Bank that since he would be assisting Briones with the improvements, a $20,000.00 loan would cover both the cost of the improvements and the delinquent taxes. Therefore, the Bank loaned Waters $20,000.00 which included sufficient money for the delinquent taxes and for the home improvements. The Bank prepared the documents needed for the loan, i.e., the "MECHANIC'S LIEN NOTE," the "MECHANIC'S LIEN CONTRACT WITH POWER OF SALE AND ASSIGNMENT," and the "TRI-PARTY FINANCING AGREEMENT" (Tri-Party Agreement).

The Tri-Party Agreement obligates the Bank to make a loan to its borrowers (the Waters) in the amount of $20,000.00 provided that Briones, as contractor, sells to the bank the indebtedness and lien created by the mechanic's lien contract. This sale and purchase is to be consummated in installments as Briones earns the right to payment under the mechanic's lien contract and the Bank advances portions of the loan on behalf of the Waters to pay for the work. The first draw on the loan, a cashier's check for $5,000.00, was made payable to Charles and Pearl Waters and Geronimo Briones. Gaile Hoad, the Bank's loan officer who handled the loan herein, indicated that a portion of the $5,000.00 ($4,244.02) went to discharge the delinquent taxes on the Waters' property and to pay closing

costs. Briones originally sued Waters and the Bank. Briones and Waters settled their differences during trial. Waters is not a party to this appeal. The only issue remaining is between the Bank and Briones.

When construing a written contract, the primary concern of an appellate court is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). To achieve this goal, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the entire instrument. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962).

Section 1 of the Tri–Party Agreement states, in relevant part, that the "Bank shall make a loan (the "Loan") to Borrower [the Waters] in the principal amount of $20,000.00. . . ." A typewritten statement at the end of Section 1 states that "[t]he initial advance on the loan in the amount of $_____ shall be paid to discharge existing tax liens on the property." Gaile Hoad testified that this typewritten provision was added to the agreement.

Although the amount of the initial advance needed to discharge the tax liens is not specified, this does not render the meaning of this provision uncertain or ambiguous concerning whether the initial advance is to be applied to discharge the existing tax liens. Thus, the true intention of the parties was to allocate a portion of the loan proceeds for payment of the taxes. The exact amount could have been supplied by extrinsic evidence. Briones signed the agreement along with the Waters and the Bank. There was no doubt that Briones was aware that a portion of the loan proceeds were to be used to pay the delinquent taxes on the subject property. Thus, a fact issue was raised concerning whether the bank and Briones agreed that a portion of the loan proceeds would be used to pay the existing tax liens on the Waters' property.

Moreover, Section 3 of the agreement provides, in relevant part, that:

> Bank has no obligation to make the Loan until Contractor [Briones] sells the indebtedness owing under the Contract together with the mechanic's lien and security interest securing the payment thereof and Financing Statement (the "Contractor's Documents") to Bank by assignment and endorsement, in form and substance satisfactory to Bank. *The purchase price (the "Purchase Price") of the Contractor's Documents shall be the contract price (the "Contract Price") set forth in the Contract or so much thereof as may be earned thereunder.* . . . (Emphasis added.)

According to the Tri–Party Agreement, the Bank's duty to make advances on the loan to pay for construction of the improvements is owed to its borrowers (the Waters), and these amounts shall be "advanced under the loan on behalf of Borrower and shall be delivered directly to Contractor [Briones] as an installment payment owing to Contractor for the purchase of Contractor's Documents as provided in Section 3 hereof." Ownership of these documents becomes "vested in the Bank at the times Bank makes advances to Borrower under the loan to pay Contractor for the Completed Work." The amount of each advance is the amount which Contractor has earned under the contract.

Thus, if Briones did not fully perform the contract, then the agreement allows the Bank to pay the amount Briones actually earned rather than the contract price of $20,000.00. This raises a fact issue concerning whether Briones earned the full amount, or earned some amount less than the full amount, i.e., the loan amount of $20,000.00 less $4,244.02 for taxes and closing costs. If Briones did not earn the full amount, the Bank would be justified in not paying the full $20,000.00.

We conclude that the Tri–Party Agreement raises a fact issue regarding whether

the Bank has to pay Briones the entire loan amount of $20,000.00 for his work. The trial court erred in granting an instructed verdict favorable to Briones. *See White,* 172 S.W.2d at 296; *In re K.D.R.,* 590 S.W.2d at 178. Point one is sustained.

By point five, the Bank complains the trial court erred in excluding extrinsic evidence of the "understanding of the parties" concerning the amount of the "initial advance" which was to be paid to discharge existing tax liens on the Waters' property. In a bill of exceptions, Gaile Hoad, the loan officer who handled the loan herein, testified about what happened during the closing of the loan. According to Hoad, she, Briones, the Waters and a title company representative discussed the fact that the initial advance would be used to pay the delinquent taxes. The amount to discharge the existing tax liens, $3,983.02, was supposed to go in the blank contained in Section 1 of the agreement where it states that "[t]he initial advance on the loan in the amount of $____ shall be paid to discharge existing tax liens on the property." The Bank intended for the amount of taxes to be inserted in the agreement, but the closing agent neglected to write the figure in the blank. At the closing, Briones signed the Mechanic's Lien Note, the Mechanic's Lien Contract, and the Tri–Party Agreement.

■ Where a writing is incomplete or ambiguous, parol evidence becomes admissible to explain the writing or to assist in the ascertainment of the true intention of the parties insofar as the parol evidence does not alter or contradict any part of the written memorandum in question. *Patterson v. Patterson,* 679 S.W.2d 621, 624 (Tex. App.—San Antonio 1984, no writ); *Warren Brothers Co. v. A.A.A. Pipe Cleaning Co.,* 601 S.W.2d 436, 438–39 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.). Here, the Tri–Party Agreement is incomplete regarding the amount of the initial advance that would be expended to discharge the tax liens. Thus, the amount to be expended could have been established by parol evidence. We hold, therefore, that the trial court erred in excluding Gaile

Hoad's testimony concerning the amount of the initial advance to be expended to discharge the tax liens. Point five is sustained.

■ By point eight, the Bank complains that the trial court erred in failing to enter judgment on its counterclaim based on an agreement contained in the "AFFIDAVIT AS TO DEBTS AND LIENS." On January 23, 1987, in connection with the closing of the permanent loan on the improvements, Briones visited Gaile Hoad's office and executed an "AFFIDAVIT AS TO DEBTS AND LIENS" (affidavit). Charles and Pearl Waters also signed this affidavit. The notarized affidavit states, in relevant part, that:

All labor and materials used in the construction of improvements on the above described property [the Waters' property] *have been paid* for and there are now no unpaid labor or material claims against the improvements or the property upon which same are situated, and *I hereby declare that all sums of money due for the erection of improvements have been fully paid and satisfied.* (Emphasis added.)

The affidavit also contained an indemnity provision which states as follows:

I AGREE TO PAY ON DEMAND TO THE PURCHASERS AND/OR LENDER IN THIS TRANSACTION, THEIR SUCCESSORS AND ASSIGNS, ALL AMOUNTS SECURED BY ANY AND ALL LIENS NOT SHOWN ABOVE, TOGETHER WITH ALL COSTS, LOSS AND ATTORNEY'S FEES THAT SAID PARTIES MAY INCUR IN CONNECTION WITH SUCH UNMENTIONED LIENS, PROVIDED SAID LIENS EITHER CURRENTLY APPLY TO SUCH PROPERTY OR A PART THEREOF, OR ARE SUBSEQUENTLY ESTABLISHED AGAINST SAID PROPERTY AND ARE CREATED BY ME, KNOWN TO ME, OR HAVE AN INCEPTION DATE PRIOR TO THE CONSUMATION OF THIS TRANSACTION.

According to Briones, the indemnity provision provides that the Bank shall be indemnified for all costs incurred in connec-

tion with liens and cannot be extended to include his suit for breach of contract. He maintains that the indemnity provision is not an agreement by Briones that the Bank has performed on its obligation to pay him for the note and Mechanic's Lien Contract. We disagree.

■ The language employed by the parties to a written instrument should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex.1966); *Skyland Developers, Inc. v. Sky Harbor Associates*, 586 S.W.2d 564, 570 (Tex.Civ. App.—Corpus Christi 1979, no writ). The language of the affidavit clearly states that "all sums of money due" for the construction of the improvements have been fully paid and satisfied. Thus, the parties' intention is to assure the Bank that all sums owing for the construction of the improvements have been paid. The affidavit obligates Briones to pay any claims which might thereafter be asserted, including his own. Moreover, the affidavit is not self-serving because it is totally adverse to Briones' interests. Based on the affidavit, there is no fact issue for determination between Briones and the Bank. Therefore, we hold that the trial court should have granted the Bank's motion for instructed verdict based on Briones' certification that all the construction bills have been paid and that he would indemnify the Bank against any claims or liens for any work performed. Point eight is sustained. We do not need to address the remaining points of error.

The trial court's judgment is hereby REVERSED and judgment is RENDERED that appellee Briones take nothing against the First Victoria National Bank.