**SMITH, SECKMAN, REID, INC. and Prozign, Inc., Appellants,**

v.

**METRO NATIONAL CORPORATION, Appellee.**

**No. 01–91–00991–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 26, 1992.

Rehearing Denied Oct. 8, 1992.

Mynde S. Eisen, Michael C. O'Connor, Houston, for appellants.

Joe R. Blackburn, Houston, for appellee.

Before MIRABAL, SAM BASS and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a summary judgment for the defendant in a breach of contract suit. We reverse and remand.

The following facts are uncontroverted: The subject of the contract was a 40–lane bowling alley that Fame Memorial, Ltd. (Fame) planned to build at Memorial City Mall in Houston. Fame was a tenant under a lease with Metro National Corporation (Landlord). The lease granted Fame a $1.1 million construction allowance, payable by Landlord, for the tenant buildout of the bowling alley. Additionally, Landlord had the responsibility to ensure the "shell" of the mall structure was properly prepared for the construction of the improvements Fame planned to build.

Fame hired appellant, Prozign, Inc., to provide the architectural design for the bowling alley. They signed a "Standard Form of Agreement Between Owner and Architect" dated July 19, 1989.

Fame hired appellant Smith, Seckman, Reid, Inc., to provide mechanical, electrical and plumbing engineering services for the construction of the bowling alley. They signed a written contract.

On June 5, 1990, appellants filed suit against Landlord[1] alleging that, although their written contracts were with Fame, Landlord's authorized agent orally represented to appellants that Landlord would be responsible for payment to appellants for their services in connection with the planned bowling alley. Appellants further alleged that they relied on such oral representations to their detriment when they performed services and then were not paid a total of $51,152.38, which they alleged was due and owing from Landlord.

Landlord responded, pleading the Statute of Frauds as an affirmative defense. Landlord then filed a motion for summary judgment, asserting as grounds the bar of the Statute of Frauds set out in TEX.BUS. & COM.CODE ANN. § 26.01(b)(2) (Vernon 1987). Appellants responded with their own motion for summary judgment, as well as a separate response to Landlord's motion for summary judgment. After an oral hearing, the trial court granted Landlord's motion for summary judgment.

---

**1.** Appellants did not sue Fame. The unsworn pleadings indicate Fame went out of business, filed bankruptcy proceedings, and the bowling alley was never completed.

In their sole point of error, appellants assert the trial court erred in granting Landlord's motion for summary judgment because there is summary judgment evidence of an enforceable oral agreement. Appellants argue there is a fact issue raised by the evidence, and seek reversal of the judgment and remand for trial.

■■■ The standard for appellate review of a summary judgment for a defendant is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Dodson v. Kung*, 717 S.W.2d 385, 390 (Tex. App.—Houston [14th Dist.] 1986, no writ). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

■■■ If a defendant moves for summary judgment based on an affirmative defense, the defendant's burden is to prove conclusively all the elements of the affirmative defense as a matter of law. *Montgomery*, 669 S.W.2d at 310–11. Unless the movant conclusively establishes the affirmative defense, the nonmovant plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970).

■■■ Appellants' original petition clearly stated that suit was brought on an oral agreement. In support of its motion for summary judgment, based on the Statute of Frauds as a bar to the enforceability of such an oral agreement, Landlord filed sworn copies of (1) its lease with Fame; (2) the contract between Fame and appellant Prozign, Inc.; and (3) the contract between Fame and Smith, Seckman, Reid, Inc. Landlord additionally filed an affidavit of its supervisor of maintenance and construction that reads, in part, as follows:

In the summer and early fall of 1989, I worked with several contractors including representatives of the plaintiffs in the above numbered and titled cause in work they were doing in preparation for the construction of a bowling alley by a tenant of Memorial City Mall, Fame Memorial Ltd. My job was to ensure that the work they did was within the standards set by the mall and within the provisions set out in the lease between the mall and our tenant Fame Memorial Ltd. I did at one point in time represent to representatives of the plaintiffs that they would receive checks made jointly payable to them and to our tenant provided that the monies due were within the building allowance granted to our tenant. This was to ensure that there was a proper application of our build out allowance funds. I never at any time represented to any representatives of the plaintiffs that the Metro National Corporation, the mall or any other entity would be responsible for or pay their bills. I nor anyone else connected with Metro National Corporation took part in the negotiation of the contracts between our tenant and the plaintiffs; defined the scope of work that the plaintiffs were to do for our tenant or at any time control the work that was to be done by the plaintiffs for our tenant.

Taking into consideration appellants' petition and Landlord's summary judgment evidence, it was established in the record, at that point, that (1) appellants were seeking to enforce an alleged promise by Landlord to answer for the debt of Fame to appellants, and (2) the alleged promise of Landlord was not in writing. Therefore, Landlord conclusively established the section 26.01(a),(b)(2) Statute of Frauds affirmative defense, and the burden was on appellants to set forth evidence sufficient to give rise to a fact issue to avoid summary judgment. *See "Moore" Burger, Inc.*, 492 S.W.2d at 936–37.

■ Appellants' summary judgment evidence included two affidavits that describe an August 31, 1989, meeting among Landlord's supervisor of maintenance and construction, representatives of both appellants, and Fame. According to the affidavits, after the meeting, Landlord's supervisor spoke to appellants in the hallway and represented that "[Landlord] would be paying [appellants] for the architectural and engineering services on the project and there would be no problem in getting paid for these services." The affidavits further state that Landlord took an active role in the management of the bowling alley project throughout the course of the project. Further, between October 20 and November 10, 1989, appellants received a total of three "dual payee" checks from Landlord, payable jointly to Fame and the appellant who did the work. Landlord withheld 10 percent of the invoiced amounts when it wrote the "dual payee" checks.

The summary judgment evidence also includes excerpts from the deposition of Landlord's supervisor of maintenance and construction. He testified that he had approximately 20 meetings with Fame and appellants "to define the shell work versus the tenant work; to inspect MEP services available; existing conditions; and, in some cases, to review the documents being prepared by [appellants]." He said he discussed the process of payment agreed on between Landlord and Fame. He told appellants that payment for their work on the bowling alley would be made by Landlord to Fame by joint checks payable to Fame and the subcontractor. The reason "dual payee" checks were written was so that Landlord could "make sure that we got the proper value for the dollars being paid out to the tenant under the [$1.1 million buildout] allowance." Landlord did not want to issue checks only to Fame and not know whether there were corresponding goods and services benefitting the project. The "dual payee" check method of payment to Fame was stipulated to in the agreement between Landlord and Fame.

In the trial court, and on appeal, Landlord denies the existence of any oral agreement between Landlord and appellants. There was a written agreement between Fame and Landlord, and part of the agreement involved a stipulation that payments to Fame out of the buildout allowance would be "dual payee" checks, payable to Fame and its subcontractors. Landlord asserts appellants, as subcontractors, were merely advised about the payment arrangement agreed on between Fame and Landlord. Landlord argues it did not become responsible to appellants directly merely because it insisted on making payments to Fame on a "dual payee" basis.

However, appellants' affidavits indicate an express agreement by Landlord to be responsible for the payment to appellants for their services in connection with the buildout. In this summary judgment proceeding, we find appellants' affidavits are sufficient to raise a fact issue about whether an oral agreement was entered into between appellants and Landlord.

■ The main issue in this case is the effect of the Statute of Frauds on such an oral agreement. The applicable Statute of Frauds provides, in part, that "a promise by one person to answer for the debt, default, or miscarriage of another person," is not enforceable unless the promise is in writing and signed by the person to be charged. TEX.BUS. & COM.CODE ANN. § 26.-01(a), (b)(2) (Vernon 1987). However, an exception exists: where a promissor accepts primary responsibility for the debt of another, and his "leading object" or "main

purpose" is to serve some interest of his own, his oral promise does not come within the Statute of Frauds and is enforceable. *Haas Drilling Co. v. First Nat'l Bank in Dallas,* 456 S.W.2d 886, 891 (Tex.1970); *Gulf Liquid Fertilizer Co. v. Titus,* 354 S.W.2d 378, 382 (Tex.1962); *Keith v. Woodul,* 616 S.W.2d 375, 377 (Tex.App.—Texarkana 1981, no writ).

There are three tests to determine if a promise is enforceable notwithstanding the Statute of Frauds:

1. Did the promissor intend to become primarily liable for the debt, in effect making it his original obligation, rather than to merely become a surety for the original obligor?

2. Was there consideration for the promise?

3. Was receipt of the consideration the promissor's main purpose or leading object in making the promise, i.e., was the consideration given for the promise primarily for the promissor's own use and benefit.

*Haas Drilling Co.,* 456 S.W.2d at 890; *Titus,* 354 S.W.2d at 383; *First Nat'l Bank in Clarksville v. Moore,* 628 S.W.2d 488, 491 (Tex.App.—Texarkana 1982, writ dism'd).

■■■ With regard to the first test, if the words used by the promissor are not clear and are susceptible of more than one meaning, the question of intent to be *primarily responsible* for another's debt is one for the finder of fact, taking into account all the facts and circumstances of the case. *Haas Drilling Co.,* 456 S.W.2d at 889; *Titus,* 354 S.W.2d at 384. In the present case, appellants' affidavits state Landlord's agent represented that Landlord "would be paying" appellants for their services on the bowling alley and "there would be no problem in getting paid." We

conclude a question of fact was raised about whether Landlord, by its statements, intended to become primarily liable to appellants.[2]

■■■ With regard to the second and third tests, the summary judgment evidence indicates the owner of the mall was interested in having a bowling alley at the mall, and the architectural and engineering services of appellants were provided in furtherance of the goal of building a 40–lane bowling alley as an improvement to Landlord's property. The court in *Hacker v. Whitney* made the following relevant comments:

In passing upon whether or not an oral promise or agreement of a property owner to pay for materials furnished to a contractor constitutes a promise to answer for the debt, default or miscarriage of another within the meaning of the Statute of Frauds it is proper for the courts to consider the circumstances surrounding the transaction out of which such promise or agreement arises.... While, as in all cases involving promises by an owner or other interested person to pay for work or labor to be furnished to a contractor, the circumstances of the transaction are an all-important consideration, the courts seem inclined to hold that where the promise is confined to payment out of funds in the promisor's hands owing to the contractor, it is not within the Statute of Frauds....

*Hacker,* 225 S.W.2d at 226. The *Hacker* court cited *Atkinson v. Jackson Brothers,* 259 S.W. 280, 283 (Tex.Civ.App.—Austin 1923, no writ), for the proposition that "where the oral promise or contract of an owner is to pay for materials furnished to a contractor out of funds owing or to become owing to the contractor, such promise or

---

**2.** We note (1) there is no summary judgment evidence showing whether Fame was in default in its payment obligations to appellants on August 31, 1989, when Landlord assured appellants of payment; (2) there is no summary judgment evidence showing if or when Fame went out of business or filed bankruptcy proceedings (only unverified pleadings indicate such developments); (3) there are no invoices from appellants in the record showing what services they rendered and when they performed them. However, even in the absence of such evidence, because of the nature of the business relationship among the parties, and taking into account the face of the pleadings and defendant's burden on summary judgment, we conclude a fact issue was present regarding Landlord's liability. *See Hacker v. Whitney Dam Lumber & Const Co.,* 225 S.W.2d 225 (Tex.Civ.App.—Waco 1949, writ ref'd).

contract is based upon a valid consideration and does not come within the Statute of Frauds." *Hacker,* 225 S.W.2d at 226.

In the present case, Landlord was bound by the lease to provide Fame up to $1.1 million in buildout funds for the bowling alley. Under the reasoning of *Hacker,* if appellants are able to prove that Landlord made an oral promise to be primarily responsible to pay appellants out of funds owing to Fame, such promise will be deemed based upon a valid consideration given primarily for Landlord's own use and benefit, and therefore will not come within the Statute of Frauds.

Accordingly, we conclude a fact issue exists in this case. We sustain appellants' sole point of error.

We reverse the summary judgment and remand for trial.