John GARNER and Wife, Lanelle H. Garner, Appellants,

v.

CORPUS CHRISTI NATIONAL BANK, Appellee.

No. 13–95–105–CV.

Court of Appeals of Texas, Corpus Christi.

April 10, 1997.

Order Overruling Rehearing May 22, 1997.

James R. Harris, Andrew M. Greenwell, Harris & Thomas, Corpus Christi, for Appellants.

Ronald B. Brin, Thomas F. Nye, Linda C. Breck, Brin & Brin, Corpus Christi, for Appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a suit to recover benefits allegedly due under an employment contract. John and Lanelle Garner sued Corpus Christi National Bank (CCNB) to collect benefits allegedly due under an employment contract between John Garner and CCNB. Both parties moved for summary judgment. The trial court granted CCNB's motion and denied the Garners' motion for summary judgment. The Garners appeal by fifteen points of error. We affirm in part and reverse and remand in part.

In 1974, CCNB hired John Garner as its president and chief executive officer. At some point, Valero Corporation offered him a job, which he considered. Due to that offer, CCNB's executive committee entered into an employment contract with Garner. The contract stated that it was a commitment made to John Garner as of August 4, 1980 (the 1980 Commitment). It stated that Garner was to continue in CCNB's employ, subject to health and ability to perform. It also stated that he was to be entitled to incentive bonuses, ESOP plan, ICESOP plan, Career Executive Stock Plan, a Management Security Plan (if adopted), and other benefits of executive employees-all based on his base salary or otherwise as applicable.

Mercantile Texas Corporation owned CCNB when the latter made the 1980 Commitment. Mercantile Texas established a management security plan (MSP), and on March 29, 1983, Garner and Mercantile Texas signed an agreement showing Garner's participation in the MSP. Thereafter, Mercantile Texas and Southwest Bancshares merged, and the surviving entity became known as MCorp. CCNB became known as MBank Corpus Christi, an MCorp subsidiary. MCorp replaced the Mercantile Texas MSP with an MCorp Executive Security Plan (ESP). On December 28, 1984, Garner and MCorp signed an agreement showing Garner's participation in the MCorp ESP.

Garner's salary and other benefits were paid to him in accordance with the 1980 Commitment through December 1, 1986, his retirement date. On that date, Garner began receiving payments of $9,068.13 per month from MCorp under his 1984 ESP agreement with MCorp. These payments continued through April or May of 1989. On March 20, 1989, MCorp filed for bankruptcy, and all MCorp ESP payments ceased.

John Garner and his wife, Lanelle, sued CCNB, alleging that CCNB breached its obligations under the 1980 Commitment because it refused to pay them the ESP benefits. Garner sought to recover the money due to him under the 1980 Commitment.

CCNB moved for summary judgment on the grounds that it did not breach the 1980 Commitment, that John Garner was not a consumer under the DTPA, and that it was not liable under the Personnel Employment Services Act. The Garners also moved for summary judgment on their suit. The court granted summary judgment for CCNB on all grounds, and it denied the Garners' summary judgment motion. This appeal followed.

■ To prevail on a summary judgment motion, a movant must establish that there is no genuine issue concerning any material fact and that the movant is entitled to judg-

ment as a matter of law. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively negates at least one of the essential elements of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, we must accept as true evidence in the nonmovant's favor, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ By point fifteen, the Garners assert that the court erred in granting summary judgment for CCNB because Jerry Gates' affidavit was testimony of an interested witness without personal knowledge, and it was not free from contradictions and otherwise clear, positive, and direct.

CCNB's summary judgment motion included Jerry Gates' affidavit. Gates was a former president, CEO, and director of CCNB. The Garners argue that the summary judgment proof showed that CCNB considered the ESP its employee benefit plan, but that Gates' affidavit controverted that position. Therefore, Gates' affidavit was not sufficiently clear, positive and direct, otherwise credible and free from contradictions and inconsistencies in order to support a judgment for CCNB.

Rule 166a(f), Texas Rules of Civil Procedure, states that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Gates stated in his affidavit that he had personal knowledge of the facts because: 1) as former president, CEO, and director of CCNB, he had reviewed the 1980 Commitment; 2) he attended and participated in subsequent CCNB Board of Directors and Executive Committee meetings at which the 1980 Commitment and Garner's benefits thereunder were discussed; and 3) he reviewed Garner's personnel, payroll, and retirement files. Therefore, he was familiar with the provisions and administration of the 1980 Commitment and the facts set forth therein.

Gates' affidavit met the requirements of Rule 166a(f) because it showed how he became familiar with the facts in the affidavit. Further, the affidavit is clear, positive and direct, otherwise credible, and free from contradictions and inconsistencies. We overrule point fifteen.

■ By points one and two, the Garners assert that the court erred in granting summary judgment on their contract claim. They assert that the unambiguous language of the 1980 Commitment establishes that Garner is entitled to the promised benefits. Alternatively, the language is ambiguous, precluding summary judgment on their claim. In any event, the 1980 Commitment did not unambiguously provide that CCNB was not liable to Garner for the employee benefits it promised.

The operative language of the 1980 Commitment stated as follows: "J.G. [John Garner] is to be entitled to incentive bonus, ESOP plan, ICESOP plan, Career Executive Stock plan, and Management Security Plan (if adopted) and other benefits of executive employees-all based on his base salary or otherwise as applicable."

The Garners' contention is that CCNB is liable to Garner for benefits because the 1980 Commitment stated that he was entitled to a Management Security Plan (if adopted) and other benefits of executive employees.

CCNB's summary judgment motion attacked the contract claim on three grounds. First, it argued that the 1980 Commitment was an unambiguous document which did not entitle Garner to the MSP benefits unless adopted by CCNB.

■ In construing a written contract, the primary concern of the court is to ascertain the parties' true intentions as expressed therein. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Cambridge Oil Co. v. Huggins,* 765 S.W.2d

540, 543 (Tex.App.—Corpus Christi 1989, writ denied). All provisions in a contract are considered with reference to the whole instrument. *Coker*, 650 S.W.2d at 393; *First Victoria Nat'l Bank v. Briones*, 788 S.W.2d 632, 634 (Tex.App.—Corpus Christi 1990, writ denied). If the written instrument is worded so that it has a certain, definite meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Coker*, 650 S.W.2d at 393; *Huggins*, 765 S.W.2d at 543.

■■■ We give the language used by parties in a contract its plain, grammatical meaning unless it definitely appears that this would defeat the parties' intention. *Reilly*, 727 S.W.2d at 529; *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). When construing the terms of an instrument, we will presume that they will have their plain, ordinary, and generally accepted meanings unless the instrument itself shows the terms were used in a technical or different sense. *Milton v. Aransas Shrimp Co-op.*, 668 S.W.2d 735, 739 (Tex.App.—Corpus Christi 1983, writ dism'd).

According to the 1980 Commitment, the intention of the parties was that Garner would participate in the MSP (if adopted) and receive other benefits of executive employees. This language has a certain, definite meaning or interpretation, and, therefore, is not ambiguous. We will construe the contract as a matter of law. *See Coker*, 650 S.W.2d at 393; *Huggins*, 765 S.W.2d at 543.

Jerry Gates, CCNB's former president and CEO, stated in his affidavit that CCNB was not a party to Garner's 1983 agreement with Mercantile Texas to participate in Mercantile's MSP. CCNB was also not a party to Garner's 1984 agreement with MCorp to participate in MCorp's ESP. He further stated that on various occasions, CCNB did adopt other programs and plans of both MCorp and Mercantile Texas. However, CCNB's board of directors never adopted the MSP and ESP for Garner's benefit.

Since CCNB did not adopt the MSP or ESP, Garner was not entitled to receive these benefits as part of the 1980 Commitment.

■■■ CCNB's second attack on the contract claim was that it had no liability to pay the ESP benefits because the contract language did not guarantee payment of those benefits in the event the parent corporation defaulted.

■■■ A promise by one person to answer for the debt, default, or miscarriage of another person is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the party upon whom liability is sought. TEX. BUS. & COMM. CODE ANN. § 26.01(a), (b)(2) (Vernon 1987); *Smith, Seckman, Reid, Inc. v. Metro Nat'l Corp.*, 836 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, no writ). This statute requires that a written memorandum must exist which is complete within itself in every material detail, and which contains all of the essential elements of the agreement so that a person can ascertain the contract from the writings without resorting to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978); *Block v. Aube*, 718 S.W.2d 914, 915 (Tex.App.—Beaumont 1986, no writ).

■■■ A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another, and a creditor may call upon the guarantor to perform once the primary obligor has failed to perform. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 114 (Tex.1978).

In the instant case, the 1980 Commitment is complete within itself in every material detail, and it included all the essential elements of the agreement. The contract did not create a secondary obligation whereby CCNB promised to answer for the debt of another, including MCorp. *See Cohen*, 565 S.W.2d at 232; *Block*, 718 S.W.2d at 915. The Garners did not have a written agreement showing that CCNB agreed to become liable for MCorp's debt arising from Garner's 1984 ESP agreement with MCorp. In his deposition, Garner answered "I don't recall" when asked if anyone from CCNB represented to him, either before or after the 1980 Commitment, that in the event that the obligor under an MSP or ESP quit making payments, that CCNB would guarantee the remainder of the payments.

Jerry Gates stated in his affidavit that CCNB never guaranteed and never represented to Garner that it would guarantee Mercantile Texas' obligation to Garner under his 1983 agreement with Mercantile Texas or that it would guarantee MCorp's obligation to Garner under his 1984 agreement with MCorp.

The 1980 Commitment did not show that CCNB promised to guarantee payment of the MCorp ESP benefits to Garner, and no other agreement existed to guarantee those benefits. Therefore, CCNB had no liability to pay the ESP benefits.

■ CCNB's third attack on the contract claim was that it fully performed all the obligations under the 1980 Commitment. To prove breach of contract, a party must show 1) the existence of the contract sued upon, 2) compliance with the terms of the contract, and 3) the other party's breach of that contract. *St. Paul Ins. Co. v. Rakkar*, 838 S.W.2d 622, 629 (Tex.App.—Dallas 1992, writ denied).

The 1980 Commitment provided that Garner was to continue working for CCNB subject to health and his ability to perform. The contract stated the salary he was to receive, along with other benefits.

In his affidavit, Jerry Gates stated that according to the records in Garner's payroll and personnel files at CCNB, Garner received all the benefits which the 1980 Commitment required CCNB to pay him. His salary and other benefits were paid to him in accordance with the 1980 Commitment through December 1, 1986, the date of his retirement. At that time, he also received a lump-sum payment of $584,115.41 with respect to his MCorp retirement Plan and $88,081.14 from his Money Max Plan. Garner and his wife remained eligible for medical insurance and received a $5,000 life insurance policy on Garner's life. CCNB paid Garner a consulting fee, calculated at $100,000 per year, from December 1,1986 through December 31, 1990.

Since CCNB paid all the salary and benefits to Garner which the 1980 Commitment required it to pay, CCNB fully performed the contract, and no breach of contract oc-

curred. *See Rakkar*, 838 S.W.2d at 629. We hold that the trial court did not err by granting summary judgment for CCNB on the breach-of-contract claim. We overrule points one and two.

■ By point six, the Garners assert that the court erred in granting summary judgment on their reliance claim because CCNB did not move for summary judgment on that claim.

The Garners' summary judgment motion asserted the reliance claim as an alternative if the trial court did not find that a contract was established as a matter of law. The trial court granted CCNB's summary judgment motion on *all* grounds. The trial court, by granting CCNB's summary judgment motion on the contract claim, found that a contract was established. This finding excluded the reliance claim. CCNB did not have to move for summary judgment on that claim. We overrule point six.

■ By point eight, the Garners assert that the court erred in granting summary judgment on their fraud claim, and by point thirteen, they assert that the court erred in granting summary judgment on their negligent-misrepresentation and tortious-interference-with-contract claims. They base their assertions on the fact that CCNB did not move for judgment on these claims.

■ CCNB did not move for summary judgment on these claims. Accordingly, even though they may appear to have no merit in view of our disposition of the contract claim, the related claims may not be summarily disposed of absent their inclusion in the motion for summary judgment. *See Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983). However, CCNB's position is that the Garners did not plead these claims.

■ A court should uphold the petition containing a cause of action that a person may reasonably infer from what is specifically stated, even if an element of the cause of action is not specifically alleged. *Smith-Kline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex.1995); *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex.1993). Still, pleadings must

give reasonable notice of the claims asserted. *Doe,* 903 S.W.2d at 354.

■ The elements of actionable fraud are: 1) that a material representation was made; 2) that it was false; 3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; 4) that he made it with the intention that the party should act upon it; 5) that the party acted in reliance upon it; and 6) that he thereby suffered injury. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977).

■ To prevail on a negligent-misrepresentation suit, the plaintiff must prove that: 1) the defendant made the representation in the course of its business or in a transaction in which it has a pecuniary interest; 2) the defendant supplied false information for the guidance of others in their business; 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Southwestern Clinic of Bone & Joint Diseases v. Farmers Ins. Group,* 850 S.W.2d 750, 753 (Tex.App.—Corpus Christi 1993, no writ); *First Interstate Bank v. S.B.F.I., Inc.,* 830 S.W.2d 239, 245 (Tex. App.—Dallas 1992, no writ).

The Garners' third-amended petition alleged that Garner and CCNB entered into an agreement on August 4, 1980, that CCNB partially performed the agreement, but that it did not totally perform all the terms and conditions of the agreement. Paragraph V of the petition stated that "as a consequence of the Defendant's [CCNB's] representations upon which the Plaintiffs reasonably relied, the Plaintiffs have suffered damages...." This paragraph was separate from the Garners' remaining claims in their third-amended petition.

The allegations show that CCNB made representations to the Garners which they relied upon. CCNB's failure to perform the agreement caused them damages. These allegations gave CCNB reasonable notice that

the Garners were asserting claims for fraud and negligent misrepresentation. *See De-Santis,* 793 S.W.2d at 688; *Stone,* 554 S.W.2d at 185; *Farmers Ins.,* 850 S.W.2d at 753; *S.B.F.I., Inc.,* 830 S.W.2d at 245.

■ The elements of tortious interference with prospective contract are: 1) a reasonable probability that the parties would have entered into a contractual relationship; 2) an intentional and malicious act by the defendant that prevented the relationship from occurring with the purpose of harming the plaintiff; 3) the defendant lacked privilege or justification to do the act; and 4) actual harm or damage resulted from the defendant's interference. *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied).

The allegations in the third-amended petition were not sufficient to place CCNB on notice that the Garners were alleging a cause of action for tortious interference with contract.

Since CCNB did not move for summary judgment on the Garners' fraud and negligent-misrepresentation claims, it was not entitled to summary judgment on those claims. *Chessher,* 658 S.W.2d at 564. We sustain point eight. We sustain point thirteen relating to the Garners' negligent misrepresentation claim, and we overrule that part of point thirteen relating to the tortious interference claim.

■ By point eleven, the Garners assert that the trial court erred in granting summary judgment for CCNB on their DTPA claim because a fact issue exists whether Garner was a consumer.

■ CCNB moved for summary judgment on the basis that Garner was not a consumer as a matter of law. The question of whether a plaintiff is a consumer under the DTPA is a question of law for the trial court. *Johnson v. Walker,* 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, writ denied); *Reed v. Israel Nat'l Oil Co.,* 681 S.W.2d 228, 233 (Tex.App.—Houston [1st Dist.] 1984, no writ).

■ In *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351 (Tex.1987), the supreme

court stated that DTPA plaintiffs must qualify as consumers, as that term is defined in section 17.45(4) of the DTPA[1] to maintain a private cause of action under section 17.50 of the Act. To establish DTPA consumer status, a plaintiff must have sought or acquired goods or services by purchase or lease, and goods or services purchased or leased must form the basis of the complaint. *Barnes*, 741 S.W.2d at 351–52; *Johnson v. DeLay*, 809 S.W.2d 552, 554 (Tex.App.—Corpus Christi 1991, writ denied).

The word "goods" means tangible chattels or real property purchased or leased for use, and the word "services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods. TEX. BUS. & COMM.CODE ANN. § 17.45(1), (2), (Vernon 1987).

A case that helps to resolve the issue in this point is *Baker v. Missouri Pac. Truck Lines, Inc.*, 616 S.W.2d 389 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In that case, Baker signed a contract with Missouri Pacific (MoPac) to deliver freight. MoPac ended the contract, and Baker sued it under the DTPA. MoPac moved for summary judgment on the ground that Baker was not a consumer. The appellate court stated:

> Baker did not acquire any tangible chattels or real property from Missouri Pacific. Neither did he purchase or lease for use any work, labor or service. Baker sought to enter into a contract whereby he would be able to furnish service to Missouri Pacific for a consideration....
>
> The term "services" includes an activity on behalf of one party by another. "Services" is similar in nature to work or labor. *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980). As a matter of law Baker was not a "consumer" as defined in the Deceptive Trade Practices Act....

*Baker*, 616 S.W.2d at 392–93.

In the instant case, Garner did not acquire by purchase or lease any tangible or real property. He also did not purchase or lease for use any work, labor, or services. He

entered into the 1980 Commitment to furnish services to CCNB for consideration. Based on these facts, Garner was not a consumer as defined in the DTPA. *See* TEX. BUS. & COMM. CODE ANN. § 17.45(1), (2), (4) (Vernon 1987); *Baker*, 616 S.W.2d at 392–93.

■ The Garners argue that during Garner's employment with CCNB, he sought retirement benefits from it and that retirement benefits are "goods" or "services" under the DTPA. However, the evidence showed that CCNB did not adopt the MSP or the ESP for Garner's benefit. Although Garner may have desired retirement benefits under the 1980 Commitment, he did not acquire any MSP or ESP benefits under the contract. We hold that the trial court did not err by granting summary judgment on the Garners' DTPA claim. We overrule point eleven.

■ By point twelve, the Garners argue that the trial court erred in granting summary judgment on their Personnel Employment Services Act (PESA) claim because a fact issue exists whether CCNB was an employment agency under PESA.

PESA protects a person from improper conduct by another who acts as a personnel service in the capacity of an owner, operator of the service, counselor, or agent or employee of the service. TEX.REV.CIV. STAT. ANN. art. 5221a–7, § 3(a) (Vernon Supp.1997).

CCNB moved for summary judgment on the basis that PESA applies to personnel services that supply labor to third parties and does not apply to two-party employment contracts.

PESA states that personnel service means: a person who for a fee or without a fee offers or attempts to procure directly or indirectly permanent employment for an employee or procures or attempts to procure a permanent employee for an employer.... The term includes a person who offers the facilities of or advertises as:

> (A) an executive search or consulting service;
>
> (B) an out-placement service;

---

1. Section 17.45(4) provides in pertinent part: " 'Consumer' means an individual, partnership, corporation ... who seeks or acquires by purchase or lease, any goods or services...."

(C) an overseas placement service;

(D) a job listing service;

(E) a personnel consulting service; or

(F) a resume service that provides job market investigation, research, or evaluation.

TEX.REV.CIV. STAT. ANN. art. 5521a–7, § 1(5) (Vernon Supp.1997).

Jerry Gates stated in his affidavit that CCNB had a personnel department which handled its personnel functions. The department was involved only in the handling of employment inquiries from persons who were interested in working for CCNB. The department did not act as a personnel service for persons seeking employment from a third party. This department never attempted to procure permanent employment for an employer other than CCNB. CCNB was not involved in the employment or personnel services business. It has never acted as an executive search or consulting service, an out-placement service, or an overseas placement service. It was not a job listing service, a personnel-consulting service, or a resume service that provided job-market investigation, research, or evaluation.

This evidence showed that CCNB did not serve as a personnel service. Therefore, it was not subject to any violation of PESA. We hold that the trial court did not err when it granted summary judgment on the Garners' PESA claim. We overrule point twelve.

■ By point fourteen, the Garners assert that the trial court abused its discretion in granting CCNB's motion to strike their fourth-amended petition.

The court heard CCNB's summary judgment motion on June 10, 1994, and on December 22, 1994. On January 6, 1995, the Garners filed their fourth-amended petition which included a claim for tortious interference with contract. CCNB did not move for summary judgment on that claim because when its motion was filed and heard, the claim was not part of the Garners' suit. CCNB filed its motion to strike the fourth-amended petition on the grounds that the Garners did not seek or obtain leave of court

to file it. The trial court found that the Garners did not obtain leave of court to file their fourth-amended petition and that they untimely filed it. The court did not consider the fourth-amended petition.

■ According to Texas Rules of Civil Procedure 63 and 66, a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice; or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990).

In the instant case, since the fourth-amended petition asserted a new cause of action, it was prejudicial on its face. Due to CCNB's objection to it, the trial court had discretion to refuse the amended pleading. *See Greenhalgh*, 787 S.W.2d at 939. We hold that the trial court did not abuse its discretion by refusing the amended pleading. We overrule point fourteen.

Due to our disposition of the above points, we need not address the remaining points of error. TEX.R.APP. P. 90(a).

We REVERSE the judgment and REMAND the case for further proceedings on the fraud and negligent-misrepresentation claims. We AFFIRM the remainder of the judgment.

## OPINION ON MOTIONS FOR REHEARING

Both appellants and appellee have filed motions for rehearing. While we overrule the motions for rehearing, we write to address the complaints raised therein.

■ Appellants complain, among other things, that this Court failed to address their ERISA[1] claims, and that the Bank never moved for summary judgment on their reliance claim. By their fourth and fifth points of error, appellants complain that the trial court erred in granting summary judgment on their ERISA claims because appellee never moved for summary judgment on those

1. Employee Retirement Income Security Act of 1974. See 29 U.S.C. § 1001 *et seq.*

**480**

claims and the evidence raised a fact issue thereon.

By Plaintiffs' Third Amended Original Petition, appellants specifically pleaded breach of the employment agreement. After stating their breach of contract theory, the appellants pleaded the following:

## IV.

Alternatively, as a consequence of the [Bank's] representations, the [Garners] are entitled to the benefits described in the Executive Security Plan, and, in addition, are entitled to reasonable attorney's fees, under applicable federal law. *See* Chapter 18 of Title 29 of the United States Code. [ERISA]

By its summary judgment motion, the Bank contended that it was entitled to prevail on all causes of action pleaded by the Garners. In particular, the Bank asserted that it did not breach the Executive Security Plan alleged by the Garners. Breach of that plan by failure to pay the required benefits was a necessary element of both the contract claim and the ERISA claim raised in state court. *See* 29 U.S.C. § 1132(a)(1)(B) & (e)(1); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 n. 1 (Tex.1994). Accordingly, the Bank was entitled to summary judgment on the ERISA claim, as well as the contract claim urged by the Garners. The ERISA claim encompasses the state-law claim for benefits due, and accordingly is dependent upon a finding that the Bank breached its duty to provide such benefits. If our original opinion was not sufficiently clear, we herein overrule appellants' fourth and fifth points of error.

By their sixth point of error, appellants also complain that the Bank never moved for summary judgment on their reliance claim. Their Third Amended Original Petition stated the following claim:

## V.

Alternatively, as a consequence of the [Bank's] representations upon which the [Garners] reasonably relied, the [Garners] have suffered damages in an amount that exceeds the minimum jurisdictional limits of this Court.

However, Texas courts have recently denied the existence of a separate cause of action in tort for detrimental reliance. *See University of Texas System v. Courtney*, 946 S.W.2d 464, 468 (Tex.App.—Fort Worth 1997, n.w.h.). Neither have we found any authority to suggest that "reliance" by itself is an independent cause of action. Rather, it is an element of other causes of action in which the tortious or unlawful conduct of the defendant is "relied upon" to the detriment of the plaintiff.

Accordingly, in the present case, paragraph five of the Garner's petition did not set out a "reliance" claim that had to be addressed in the summary judgment motion as a separate cause of action, but merely pleaded reliance as a part of its other claims in contract and tort. We properly overruled appellants' sixth point of error.

This brings us to the Bank's complaint on rehearing that fraud and misrepresentation claims were never raised in the pleadings and should not have been remanded for trial.

A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *SmithKline Beecham*, 903 S.W.2d at 354–55. We have already set out in our opinion the elements of fraud and negligent misrepresentation, both of which include the necessary elements of misrepresentation and reliance. *See DeSantis*, 793 S.W.2d at 688; *Southwestern Clinic*, 850 S.W.2d at 753. As these elements were specifically alleged in paragraph five of the petition, we conclude that the Garner's petition fairly plead a cause of action for fraud or misrepresentation.

We overrule both motions for rehearing.