NUMBER
13-01-005-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

CORPUS CHRISTI NATIONAL BANK,                                      Appellant,

 

                                                   v.

 

JOHN H. GARNER, AND WIFE, 

LANELLE H. GARNER,                                                           Appellees.

___________________________________________________________________

 

                        On
appeal from the 214th District Court

                                  of
Nueces County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

        Before
Chief Justice Valdez and Justices Dorsey and Rodriguez

                                Opinion
by Justice Rodriguez

 








          This is an appeal from a judgment
entered in favor of appellees, John H. Garner and Lanelle H. Garner, against
appellant, Corpus Christi National Bank (the Bank), on appellees= negligent
misrepresentation claim.  By four issues,
appellant contends:  (1)  the claim is barred by limitations; (2) the
evidence is legally and factually insufficient to support a claim for negligent
misrepresentation; and, (3) the trial court erred in failing to exclude
testimony of a witness.  By a cross
point, appellees assert the trial court erred in refusing to submit jury
questions related to the existence of an informal ERISA[1]
plan and ERISA estoppel.  We reverse and
render.

I.  Background

In 1974, the Bank hired John Garner as its president and chief
executive officer (CEO).  In 1980, the Bank=s executive
committee entered into an employment contract with Garner.  According to this 1980 commitment, Garner was
to continue in the Bank=s employ,
subject to health and ability to perform. 
It also stated he was to be entitled to various bonuses and other
benefits, including a Management Security Plan (MSP), if adopted.

Mercantile Texas Corporation (Mercantile Texas) owned the Bank
when the 1980 commitment was made.  The
MSP was established and, in 1983, Garner and Mercantile Texas entered into an
agreement confirming Garner was eligible to participate in the MSP.  Later, Mercantile Texas became MCorp and the
MSP was replaced with the MCorp Executive Security Plan (ESP).  On May 28, 1986, Garner and MCorp signed an
agreement showing Garner=s participation
in the ESP.  








Upon his retirement on December 1, 1986, Garner began receiving
retirement benefits from the Bank, as well as a yearly fee for his continued
services.  In addition, Garner received
monthly ESP benefits of approximately $9,000.00.  The ESP payments continued through April
1989, when MCorp filed bankruptcy.

In 1988, when MCorp began having financial difficulties, Jerry
Gates, who was the Bank=s CEO and
president at that time, contacted the Office of the Comptroller of Currency
(OCC) and asked if the Bank could guarantee Garner=s ESP
benefits.  He was told that guaranteeing
such benefits would be bad banking procedure. 
The board decided in 1988 to guarantee Gates=s benefits, but
not those of Garner.  Appellees assert
that Gates=s 1988 alleged
misrepresentation of Garner=s employment
status to the OCC as that of a consultant resulted in the Bank=s denial of the
guarantee of his ESP benefits.

On December 6, 1990, a meeting of the Bank=s board of
directors was called to again consider Garner=s request that the Bank reimburse him for
the ESP funds he had lost.  At that time,
L. James Welder, the Bank=s counsel,
informed the board he had spoken with Dennis Howell at the OCC.  According to the OCC, the Bank was prohibited
from guaranteeing Garner=s ESP.  At that meeting, the Bank decided not to
reimburse Garner for unpaid portions of the ESP benefits.








On March 20, 1992, appellees sued the Bank alleging breach of
contract under the 1980 agreement because the Bank refused to pay Garner the
value of the ESP benefits he had lost. 
The trial court granted the Bank=s motion for
summary judgment on the basis that it did not breach the 1980 commitment.  On appeal, in Garner v. Corpus Christi Nat=l Bank, 944 S.W.2d
469, 476 (Tex. App.BCorpus Christi
1997, writ denied), this Court held that the 1980 commitment was complete
within itself in every material detail. 
Because the Bank paid all the salary and benefits due Garner, which the
1980 commitment required it to pay, the Bank fully performed the contract and
no breach of contract occurred.  Id.  This Court remanded the case for trial on
appellees= fraud and
misrepresentation claims finding, under liberal pleading rules, those two
causes of action had been pleaded and were not disposed of by the summary
judgment.  Id. at 476-77.  In our opinion, we noted:

[E]ven though
[the claims for fraud and misrepresentation] may appear to have no merit in
view of our disposition of the contract claim, the related claims may not be
summarily disposed of absent their inclusion in the motion for summary
judgment.

 

Id. at 476.

On remand the case went to trial on appellees= claims of
fraud, agency and negligent misrepresentation. 
The Bank moved for an instructed verdict at the close of plaintiffs= case and again
at the close of the evidence, asserting that appellees= negligent
misrepresentation claim was barred by the two-year statute of limitations as a
matter of law because the alleged misrepresentation occurred in 1988, and
appellees= original
petition was not filed until four years later on March 20, 1992.  The trial court overruled the motions and submitted
appellees= claim for
negligent misrepresentation to the jury. 
The jury found against the Bank on the negligent misrepresentation
claim.[2]  It is from the judgment on this claim that the
Bank appeals.








II.  Limitations

By its third issue, the Bank contends the trial court erred in
refusing to grant its motion for instructed verdict on limitations as a matter
of law.

A.  Standard of Review

The denial of a motion for directed verdict is reviewed by a
legal sufficiency or no evidence standard of review.  McFarland v. Sanders, 932 S.W.2d 640,
643 (Tex. App.BTyler 1996, no
writ).  A directed verdict is proper when
a defect in the opponent=s pleadings
makes them insufficient to support a judgment, the evidence conclusively proves
the fact that establishes a party=s right to
judgment as a matter of law, or the evidence is insufficient to raise an issue
of fact.  See Rivera v. Herndon Marine
Prods., Inc., 895 S.W.2d 430, 432 (Tex. App.BCorpus Christi 1995, writ denied); Kershner
v. State Bar of Tex., 879 S.W.2d 343, 346 (Tex. App.BHouston [14th
Dist.] 1994, writ denied).

B.  Analysis








An action for negligent misrepresentation must be filed within
two years of the date the cause of action accrues.  See Coleman v. Rotana, Inc., 778
S.W.2d 867, 873 (Tex. App.BDallas 1989,
writ denied).  The determination of when
the cause of action accrues is a question of law.  Willis v. Maverick, 760 S.W.2d 642,
644 (Tex. 1988).  A cause of action in
tort generally accrues when facts come into existence that authorize the party
to seek a judicial remedy, Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998), or, if the discovery rule
applies,[3]
when the plaintiff knows or, exercising reasonable diligence, should have known
of the facts giving rise to a cause of action. 
See Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997); Interfirst
Bank-Houston N.A. v. Quintana Petroleum, 699 S.W.2d 864, 876 (Tex. App.BHouston [1st
Dist.] 1985, writ ref=d n.r.e.).

Appellees= negligent
misrepresentation claim is that, in 1988, the Bank, through Jerry Gates,
negligently misrepresented to the OCC that Garner was a consultant to the Bank,
not an employee.  They claim this 1988
alleged misrepresentation caused the Bank=s board to
refuse to pay Garner for the benefits of his contract with MCorp, specifically
the ESP benefits.  Gates testified that,
in 1988, he was sure he told the comptroller of the OCC that Garner was a
consultant.  Furthermore, in 1988, the
Bank guaranteed Gates ESP benefits, but did not guarantee Garner=s benefits.








Based on the above, facts came into existence in 1988 when
Gates spoke to the OCC about Garner=s status as a
consultant and the Bank denied the guarantee of Garner=s ESP benefits,
that authorized appellees to seek a judicial remedy for negligent misrepresentation.[4]  See Johnson, 962 S.W.2d at 514.  Appellees did not file suit until 1992, more
than two years after the cause of action accrued.  See Rivera, 895 S.W.2d at 432.  Thus, the two-year statute of limitations had
run when the suit was filed in 1992.  See
Coleman, 776 S.W.2d at 873.

Nonetheless, appellees argue their claim accrued later than
1988 because the Bank's conduct was in the nature of a "continuing tort.@  They urge,

[i]t is apparent
from a review of the record that the misrepresentation of Garner=s employment
was repeated or continuing in nature and was relied upon by Garner, the OCC,
the Bank=s attorney, and
the Bank committees at various times and not just once in 1988 when Gates
discussed the Bank=s guarantee in
1988 with Dennis Howell of the OCC.  Most
notably, Garner=s employment
status was also discussed in the executive board meeting on December 6, 1990,
and the months preceding that meeting.

 








A continuing tort, an exception to the legal injury rule above,
involves both continuing wrongful conduct and continuing injury.  Upjohn Co. v. Freeman, 885 S.W.2d 538,
542 (Tex. App.BDallas 1994,
writ denied); see First Gen. Realty Corp. v. Md. Cas. Co., 981 S.W.2d
495, 501 (Tex. App.BAustin 1998, pet.
denied).  For a continuing tort, the
cause of action accrues when the continuing wrongful acts cease. Upjohn,
885 S.w.2d at 542.  A continuing tort
involves wrongful conduct inflicted over a period of time that is repeated
until desisted, and each day creates a separate cause of action.  First Gen. Realty, 981 S.W.2d at
501.  The doctrine has generally been
applied to cases in which the tortious conduct can be enjoined or otherwise
terminated by a court.  Mitchell
Energy Corp. v. Bartlett, 958 S.W.2d 430, 443 n.8 (Tex. App.BFort Worth
1997, pet. denied).  We find no Texas
case law, and appellees provide us with none, that has applied the continuing
tort doctrine to a negligent misrepresentation claim.

Moreover, the doctrine of continuing tort, with its extension
of accrual date, is rooted in a plaintiff's inability to know that the ongoing
conduct is causing him injury.  Upjohn,
885 S.W.2d at 542.  When a plaintiff
discovers his injury and its cause, then the rationale for extending the
accrual date no longer applies, and the limitations period begins to run with
his discovery.  Id.

As set out above, in 1988, Garner asked for the Bank=s guarantee of
his ESP benefits but did not receive it. 
In 1988, Gates discussed the Bank=s guarantee
of  Garner=s benefits with Howell of the OCC.  In 1988, Gates told the OCC that Garner was a
consultant, not an employee.  Gates=s ESP benefits
were guaranteed by the Bank at that time. 
Garner=s benefits were
not.  Payment of Garner=s ESP benefits
stopped in 1989 when MCorp filed bankruptcy. 
Furthermore, in December 1990, as appellees set out in their brief,

the OCC still believed the Bank was prohibited from paying any
part of the ESP benefits because Garner was a consultant and not an employee. .
. .  Based upon the same
misrepresentation of Garner=s status,
Howell [of the OCC] remained of the same opinion in December 1990 as he did in
1988, namely that the Bank could not guarantee Garner=s ESP benefits
without running afoul of safe banking practices.








Appellees' attempt to use the Acontinuing tort" doctrine to evade
the statute of limitations fails because appellees were aware of the injury and
its cause in 1988 when Gates informed the OCC that Garner=s employment
status was that of a consultant and the Bank did not guarantee his ESP
benefits.  At the very latest, in 1989
when MCorp filed bankruptcy and MCorp stopped paying Garner=s ESP benefits,
appellees were aware of the injury and its cause.  Thus, the rational for extending the accrual
date no longer applied.  Id.  We conclude, therefore, the continuing tort
doctrine is not applicable in this case and the limitations period began to run
in 1988.

Because the evidence conclusively proves the alleged tortious
act about which appellees complain occurred more than two years before suit was
filed, appellees= claim for
negligent misrepresentation is barred, as a matter of law, by the statute of
limitations.  See Rivera, 895
S.W.2d 432; Kershner, 879 S.W.2d 346; see also Bhalli v. Methodist
Hosp., 896 S.W.2d 207, 209 (Tex. App.BHouston [1st
Dist.] 1995, writ denied).  The trial
court erred in refusing to grant its motion for instructed verdict on
limitations.[5]  We sustain the Bank=s third issue.

In view of our disposition of this third issue, we need not
address the Bank=s remaining
issues.  Tex. R. App. P. 47.1.

III.  Garners= Cross Point








By a cross point, appellees assert the trial court erred in
failing to submit their ERISA claims to the jury.  Appellees contend that both the pleadings and
the evidence warranted submission of their liability theory under the ERISA
informal plan doctrine and ERISA estoppel.

A.  Informal Plan under
ERISA

Appellees requested the following jury question:  Did Corpus Christi National Bank as John
Garner=s employer
establish or maintain an informal employee pension benefit plan for the benefit
of its employee, John Garner?  

Under ERISA, an employer who establishes or maintains an
employee benefit plan is liable to the employee for failure to provide benefits
under that plan.  29 U.S.C.A. ' 1132(a)(1)(B)
(West 1999).  Furthermore, an informal
plan Amay exist
independent of, and in addition to, a formal plan.@  Elmore v. Cone Mills Corp., 23 F.3d
855, 861 (4th Cir. 1994).  However, the
informal benefit plan about which appellees appear to be complaining is not in
addition to and independent of the formal ESP plan.  It is the same plan.  Appellees argue that the ESP formal plan
which they acknowledge was entered into between John Garner and MCorp, can also
be the Bank=s informal
ERISA Plan.  However, they present no
case law to support this theory, and we find none.

Furthermore, we have already decided the issue of appellees= ERISA plan
claim.  In our opinion on motions for
rehearing in Garner, 944 S.W.2d at 479-80, we stated:

Appellants
complain, among other things, that this Court failed to address their ERISA claims
. . . .  By their fourth and fifth points
of error, appellants complain that the trial court erred in granting summary
judgment on their ERISA claims because appellee never moved for summary
judgment on those claims and the evidence raised a fact issue thereon.








By Plaintiffs= Third Amended
Original Petition, appellants specifically pleaded breach of the employment
agreement.  After stating their breach of
contract theory, the appellants pleaded the following:

 

IV.

Alternatively,
as a consequence of the [Bank=s]
representations, the [Garners] are entitled to the benefits described in the
Executive Security Plan, and , in addition, are entitled to reasonable attorney=s fees, under
applicable federal law.  See
Chapter 18 of Title 29 of the United States Code. [ERISA]

 

By its summary
judgment motion, the Bank contended that it was entitled to prevail on all
causes of action pleaded by the Garners. 
In particular, the Bank asserted that it did not breach the Executive
Security Plan alleged by the Garners. 
Breach of that plan by failure to pay the required benefits was a
necessary element of both the contract claim and the ERISA claim raised in
state court.  See 29 U.S.C. ' 1132(a)(1)(B)
& (e)(1); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 n.1
(Tex. 1994).  Accordingly, the Bank was
entitled to summary judgment on the ERISA claim, as well as the contract claim
urged by the Garners.  The ERISA claim
encompasses the state-law claim for benefits due, and accordingly is dependent
upon a finding that the Bank breached its duty to provide such benefits.  If our original opinion was not sufficiently
clear, we herein overrule appellants= fourth and
fifth points of error.

 

Id.   The law of the case doctrine is intended to
achieve uniformity.  Hudson v.
Wakefield, 711 S.W.2d 628, 630 (Tex. 1986). 
Under the doctrine, matters of law previously decided by a court of last
resort govern the case and will not be reviewed again.  Id. at 629.  This Court limited the remand of this case to
certain issues, issues  which did not
include an ERISA plan claim.  The ERISA
claim involving the plan at issue was decided in our earlier opinion and will
not be revisited.

 

 

 








B.  ERISA Estoppel

By their cross point, appellees further allege the trial court
erred in refusing to submit the following estoppel issue to the jury:  Is Corpus Christi National Bank estopped from
denying liability for the benefits described in the ESP?

Citing Lee v. Burkhart, 991 F.2d 1004, 1008 (2nd Cir.
1993), appellees contend they are asserting ERISA estoppel.  The Fifth Circuit, however, has never adopted
ERISA estoppel and has, in fact, expressed doubt as to whether a cause of
action for estoppel is cognizable under ERISA based on written statements.  McCall v. Burlington N./Santa Fe Co.,
237 F.3d 506, 513 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001); Weir
v. Fed. Asset Disposition Ass=n, 123 F.3d 281,
290 (5th Cir. 1997).  Furthermore,
joining other circuits, the Fifth Circuit has determined ERISA precludes claims
of promissory estoppel in suits seeking to enforce rights to pension benefits.   Degan v. Ford Motor Co., 869 F.2d
889, 895 (5th Cir. 1989) (citing Straub v. W. Union Tel. Co., 851 F.2d
1262, 1265-66 (10th Cir. 1988); Northwest Adm=rs, Inc. v.
B.V. & B.R., Inc., 813 F.2d 223, 226-27 (9th Cir. 1987); Nachwalter v.
Christie, 805 F.2d 956, 960 (11th Cir. 1986)).

We need not, however, consider the availability of ERISA
estoppel in this case.  Even if we were
to assume the cause of action is available to appellees, as set out above, we
have already decided the ERISA claim involving the plan at issue, see
Garner, 944 S.W.2d at 479-80, and will not revisit it.  








Thus, the trial court=s refusal to
submit the proposed ERISA questions was not error.  Appellees= cross point is overruled.

IV.  Conclusion

Accordingly, the judgment of the trial court is reversed and
rendered that appellees take nothing.                                                                             

NELDA
V. RODRIGUEZ

Justice

 

Do not
publish.

Tex.
R. App. P. 47.3.

 

Opinion delivered and
filed

this 10th day of
October, 2002.

 











[1]Employee
Retirement Income Security Act of 1974, 88 Sta. 829, as amended, 29 U.S.C.A. ''
1001-1461 (West 1999 & Supp. 2002).





[2]The
jury also found the Bank was not the ostensible agent of MCorp with regard to
the ESP.  Further, it found the Bank did
not commit fraud against appellees. 
These findings are not being challenged on appeal.





[3]The
discovery rule applies to claim of negligent misrepresentation if the injury is
inherently undiscoverable and evidence of injury is objectively verifiable.  Velsicol Chem. Corp. v. Winograd, 956
S.W.2d 529, 531 (Tex. 1997).  However,
appellees did not plead the discovery rule to toll the statute of limitations
and have not argued it on appeal.  Thus,
that matter is not before this Court.





[4]In
order to recover for a cause of action based on negligent misrepresentation,
appellees were required to prove the following elements: (1) a representation
was made by a defendant in the course of his business or in a transaction in
which he has a pecuniary interest; (2) the defendant supplied Afalse
information@ for the
guidance of others in their business; (3) the defendant did not exercise
reasonable care or competence in obtaining or communicating the information;
and (4) the plaintiff suffered pecuniary loss by justifiably relying on the
representation.  Fed. Land Bank Ass=n
of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).





[5]Appellees
also argue jury question number 5 improperly instructed the jury to determine
the first occurrence of negligent misrepresentation, as distinguished from the
last such occurrence or all such occurrences. 
See Texas Pattern Jury
Charges (Business, Consumer, Employment) (State Bar of Texas 2000)
102.23, at 95 (jury to answer by what date claimant should have discovered Aall
the false, misleading, or deceptive acts or practices@
of defendant).  However, because we have
disposed of the limitation issue based on the trial court=s
error in failing to grant the directed verdict, we need not address this
argument.  Tex. R. App. P. 47.1.