**AFFIRMED and Opinion Filed April 24, 2020**



In The
Court of Appeals
Fifth District of Texas at Dallas

No. 05-18-00802-CV

**HOSSEIN S. NAMDARKHAN AND BARDIA NAMDARKHAN, Appellants**
**V.**
**GLAST, PHILLIPS & MURRAY, P.C., MARK C. ENOCH, MARK C.**
**ENOCH, PC, AND MATTHEW ENOCH, Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-00853**

**MEMORANDUM OPINION**
Before Justices Burns, Molberg, and Reichek
Opinion by Chief Justice Burns

This appeal arises from a jury verdict for actual damages and attorney fees for

legal services performed by appellees. Appellants Hossein and Bardia Namdarkhan[1]

raise seven issues, seeking reversal of the judgment in favor of their former attorneys

(collectively, GPM.) We affirm.

In the mid-1990s, Mark Enoch handled a business litigation matter for Shawn

Namdar and the two stayed in touch in the following years. In 2015 Shawn's son,

---

[1] In their briefing, appellants refer to themselves as Shawn (Hossein) and Brad (Bardia) Namdar. We accordingly follow their preference.

Brad, was employed by Dallas Independent School District (DISD) as a probationary at-will teacher and coach and was enrolled in an alternative certification program (ACP). In March 2015, Shawn and Brad met with Mark Enoch and his son Matt, both of whom are attorneys, to discuss what Brad characterized as abusive behavior by the principal at the school where he worked. Brad was subject to six letters of reprimand (LORs), a recommendation of termination, removal from coaching duties, removal from campus, and restricted to administrative leave. Attorney Mora Namdar, Brad's sister, and several of Brad's former students, including Johnny Dao, accompanied the Namdars to the meeting.

At the meeting, the Namdars emphasized their goal in seeking legal assistance was to protect Brad's students from the principal, have the principal removed, and prevent Brad's termination if possible. To prevent waiving the attorney-client privilege, Mark asked the students to briefly leave the meeting. While the students were absent, Mark told the Namdars he was concerned that Brad would be fired. Mark also told Brad that even if successful, Brad would likely not recover attorney fees from DISD, although one of the students, Dao, might have a Whistleblower claim for which fees were potentially recoverable. Mark told the Namdars that the representation would be expensive and that he "didn't see the economics." The Namdars, however, stated economics did not matter—their goals were "a matter of principle," and they requested GPM's assistance.

Mark agreed GPM would perform the work, but made no promises as to the outcome and reminded Brad he thought termination was likely. Mark also told the Namdars his standard hourly rate was $525 and Matt's was $250, and agreed other members of the firm would work at their standard hourly rates. Mark provided estimates of $2,500 to write a letter to DISD; and $10,000 to review documents provided by the Namdars at the meeting, interview witnesses, review DISD's response and advise Brad about his options following that work. He provided no cap to the fees, however. Mark informed Shawn and Brad that GPM would send its bills to Shawn for payment, with copies to Brad. Because Mark considered Shawn a friend, he deemed a written engagement agreement unnecessary.

GPM commenced work, including reviewing the details of the six LORs issued against Brad, writing a letter to DISD, and assisting Brad in preparing and filing a grievance against the principal. On March 25, 2015, Brad met with GPM attorneys, and Mark informed Brad accrued fees were already approximately $16,000. Brad stated the fees were "fine" and instructed GPM to continue working. The Namdars also asked that GPM assist Mora in her representation of Dao, which included attending hearings with Mora on behalf of Dao.

Sixteen days later, on April 10, Mark texted Shawn that the March bill would be approximately $23,000, and that Mark's time billed in April as of that date was about $8,000. Shawn texted back thanking Mark for his work. The bill for the first month's services was $25,604.75, although it was not sent to any of the Namdars

until April 27, 2016. None of the Namdars complained about the bill immediately after receiving it, and instead, in the following weeks and months, their requests for GPM's services escalated.

The day after receiving the first invoice, the Namdars asked for GPM's assistance with a Professional Standards Office (PSO) investigation regarding Brad. Among other things, they also requested and received assistance with appealing Brad's grievance and reinstatement into the ACP; representing Dao, together with Mora who had been licensed only a short time, at a hearing regarding Dao's complaints against the principal; and assisting Dao regarding threats made against him at school. In connection with this work, the Namdars called, texted, or emailed Mark multiple times every day.

In mid-May, Shawn and Mark exchanged texts in which Mark asked why the entire bill had not been paid. In these texts, Mark informed Shawn that GPM needed to have the account brought current, and reiterated he did not believe Brad would recover any attorney fees. Mark also told Shawn that a $10,000 check GPM received from Shawn was a partial and inadequate payment. Shawn reassured Mark that "whatever the final bill is, I am going to take care of it."

In June 2015, Mark began insisting that the Namdars resolve the overdue invoices before GPM would continue working. The parties met to discuss the invoices, and for the first time the Namdars complained about GPM's bills. The Namdars characterized Mark's $10,000 estimate as a cap. The Namdars also

–4–

asserted GPM's work for Dao and work assisting Mora should have been free. GPM disputed the Namdars' complaints about the invoices, but Mark agreed the Namdars could pay an additional $13,000 and GPM would write off the remainder of the March invoice—an approximately 10% discount. But, Mark also insisted that all future services would be at GPM's standard hourly rates with no further discounts. Shawn, through his corporate entity, paid the remainder of the March invoice.

In August, Shawn and Mark texted about the status of negotiations between GPM and DISD on Brad's behalf, with Mark updating Shawn that Brad had rejected DISD's latest offer. Throughout the same time period, Brad provided instructions for GPM to utilize in its negotiations with DISD. In numerous texts, Mark asked to call Shawn regarding additional unpaid invoices, but Shawn was either not available or did not agree to speak with Mark. Shawn also informed Mark that Brad was concerned his interests had not been "represented strongly enough," and texted that he and Brad were concerned about "excessive bills, duplication of billing hours, inaccuracies" and the case having dragged on beyond when Shawn and Brad had purportedly instructed GPM to stop work and reach a resolution. Mark immediately responded that GPM had never been instructed to stop work, but would do so if that were Shawn's instruction.

No such instruction was given, however, and GPM continued assisting with Brad's grievances and, in October 2015, obtained a Grievance Resolution Agreement (Agreement) in which the LORs were either converted to lesser sanctions

or removed from Brad's personnel file. DISD also agreed to assign Brad to a teaching position in the ACP program for the 2015-2016 school year.[2] The agreement expressly provided each side would pay its own attorney fees. Although the legal dispute GPM was hired to resolve ended, the parties' dispute escalated.

That same month, Mark and the Namdars met to discuss the $77,470.25 in outstanding legal fees. GPM agreed to accept $35,000 to satisfy the entire invoice, if the Namdars made an "immediate" payment of $10,000, a further $10,000 payment within five days of the meeting, and subsequent monthly payments so as to pay the past due balance in full by May 1, 2016. In November 2015, Shawn presented GPM with two $5,000 checks, both of which included the notation, "last payments." GPM returned the checks, together with a letter in which GPM stated the Namdars had failed to make the first payments agreed upon at the October meeting. GPM stated it was revoking its offer to accept the reduced amount and demanded $70,000.86 jointly and severally from Shawn and Brad.

When the Namdars failed to pay the amount demanded, GPM sued Brad and Shawn alleging breach of contract and several related or derivative claims. The Namdars asserted counterclaims, including legal malpractice and DTPA violations

---

[2] Shortly before the Agreement was executed, and despite Brad's insistence that the Agreement include DISD's promise to reinstate him as a teacher, GPM learned that while he was on leave, Brad had accepted a job as the head soccer coach at a local college. Until he resigned from DISD in November 2015, Brad was thus receiving two paychecks and his employment with the college violated DISD's leave policy. During the course of the litigation, Brad was also terminated from the college under circumstances reminiscent of his issues with DISD.

against GPM and third-party defendants Mark Enoch, Mark C. Enoch, P.C., and Matthew Enoch (collectively the Individual Defendants). In response to the Namdars' section 17.46 DTPA claim, GPM asserted a section 17.50(c) DTPA counterclaim. Just prior to mediation, the Namdars filed with the State Bar of Texas a grievance alleging professional misconduct against Mark and Matthew Enoch.

Following GPM's motions for summary judgment, the trial court dismissed all of the Namdars' counterclaims as well as their third-party claims and affirmative defenses, except Shawn's defense that GPM's claim against him, which Shawn characterized as a claim against a guarantor, was barred by the statute of frauds.

In the liability phase of the trial, the jury found in favor of GPM on its contract claim and awarded $70,000.86 in actual damages. In the second phase, the jury awarded GPM $1,273,097 in attorney fees incurred through trial, with additional amounts for post-judgment motions and appeals. In seven multi-part issues, the Namdars allege reversible error. We discuss each issue in turn.

**DISCUSSION**

A. **No harmful charge error regarding the existence and terms of the contract**

In their first issue, the Namdars allege GPM failed to obtain a jury finding on the terms of the parties' agreement, a core issue, and further contend question one[3]

---

[3] Question one, together with instructions omitted here, asked the jury, "Did any of the following persons form an agreement with Glast, Phillips & Murray, PC to pay for fees concerning legal representation?" The question required the jury to answer "yes" or "no" for both Shawn and Brad.

was immaterial. More specifically, the Namdars contend question one asked the jury if a contract had been formed between the parties—an issue the Namdars argue was not in dispute—but neglected to ask whether the agreement was for payment of a flat fee or GPM's hourly rates. GPM counters the Namdars repeatedly denied the existence of any contract, and any error in question one arising from the failure to include disputed terms of the agreement was cured by question four, in which the jury determined GPM's damages were exactly the amount represented by the hourly rates billed by GPM. We agree with GPM.

On appeal, we evaluate whether the charge fully and fairly resolved all controlling issues raised by the pleadings and evidence without confusing the jury. *Avanti Sales Int'l, Inc. v. Pycosa Chem., Inc.*, No. 01-04-00983-CV, 2005 WL 2670740, at *3 (Tex. App.—Houston [1st Dist.] Oct. 20, 2005, no pet.) (mem. op.) ("The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely."). A charge that accomplishes that goal, even if not in the form provided by the pattern charge or submitted by the parties, demonstrates no error. *Id.*

An abuse of discretion standard governs a trial court's decision to give or refuse a particular question or instruction. *Bexar Cty. Appraisal Dist. v. Abdo*, 399 S.W.3d 248, 257–58 (Tex. App.—San Antonio 2012, no pet.); *Lone Starr Multi-*

*Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 699 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This discretion yields only to the requirements that the questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination. TEX. R. CIV. P. 277, 278; *Bexar Cty. Appraisal Dist.,* 399 S.W.3d at 257–58 (discretion subject to limitation that controlling issues of fact must be submitted to jury). Whether a charge submits the controlling issues in a case, in terms of proper theories of recovery or defense, however, is a question of law we review *de novo. Hamid v. Lexus*, 369 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.–El Paso 2005, no pet.).

Evaluating the existence of reversible error in a jury charge requires that we consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, pet. denied). We reverse a judgment for charge error only if the error probably caused the rendition of an improper judgment or probably prevented a meaningful appellate review. TEX. R. CIV. P. 44.1; *Thota v. Young*, 366 S.W.3d 678, 680 (Tex. 2012); *Daugherty v. Highland Capital Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *4 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.). Charge errors related to contested, critical issues are generally harmful, unless the jury's

findings in answer to other issues are sufficient to support the judgment. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).

In their live answers as well as responses to Requests for Admission which were read to the jury, the Namdars denied the existence of any contract. Shawn also testified he agreed to pay GPM $10,000 if Brad did not, but also stated he had no meeting of the mind with GPM regarding payment. Brad testified by deposition, which was admitted at trial, that he agreed to pay no more than $10,000 for full resolution of his claims, including removal of his LORS, reinstatement to ACP and his job, and removal of the school principal. He also claimed, however, that he had no meeting of the minds with GPM regarding payment to GPM. This testimony, in context and particularly in light of the Namdars' counsel's arguments to the jury that no meeting of the minds occurred with respect to any contract, challenged the existence of any contract rather than just the payment terms. Accordingly, the pleadings and evidence required submission of a question regarding the existence of a contract, and question one was not immaterial. *See Meek v. Bishop Peterson & Sharp, P.C.,* 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (court submits to jury only disputed fact questions).

Nor was the failure to include the payment term, or any other term, in question one harmful error. GPM's proposed contract formation question asked whether either Brad or Shawn agreed to pay GPM's standard hourly rates, while the Namdars' proposed question asked whether either agreed to pay a capped fee. The

trial court submitted neither, however, and question one as submitted to the jury omitted any inquiry regarding terms of the agreement. Nonetheless, in answering question four, the jury calculated GPM's damages as the amount of GPM's outstanding invoices, an amount derived from GPM's hourly rates and billable hours rather than any flat fee. Accordingly, the jury necessarily rejected the Namdars' capped fee term, and the answer to question four informs us that the jury determined the parties agreed that the Namdars would pay GPM's hourly rates for the hours billed. *See, e.g., Matter of Estate of Poe*, No. 08-18-00015-CV, 2019 WL 4058592, at *13 (Tex. App.—El Paso Aug. 28, 2019, no pet.) (mem. op.) (finding no jury charge error where jury necessarily resolved factual issue embedded in question).

These questions and the jury's answers further differentiate this case from *Lone Starr Multi-Theatres,* upon which the Namdars place great weight. In *Lone Starr,* a landlord sued a tenant for breach of lease, but the jury was never asked what amount of rent the landlord lost as a result of the breach. *Lone Starr Multi-Theatres*, 365 S.W.3d at 698. Instead, the jury determined the reasonable period of time necessary for the landlord to return the property to rentable condition following neglect for which the tenant was allegedly responsible. As the only element of damage, the jury was asked to determine the fair market monthly rental value of the property on the date the tenant vacated the property. *Id.* From those answers, the trial court calculated the landlord's damages for breach by multiplying the fair market rental value and the reasonable period of time necessary to perform repairs,

–11–

and awarded that amount for lost rentals. But none of the questions submitted to the jury asked the amount of lost rentals suffered by the landlord, and the "fair market value" determination did not include or even support a lost rentals determination. *Id.* at 699. Thus, the appellate court determined the challenged questions were immaterial and reversed the judgment regarding the lost rentals. In comparison, here, the jury's answer to question four provided the payment term of the parties' agreement, while question one confirmed the existence of a disputed agreement. The trial judge did not need to calculate, extrapolate, or determine any element of damages.

Further, although the payment terms were not "essentially the sole issue addressed by the evidence" as argued by the Namdars, we find no error in omitting any other disputed terms from the charge. First, neither the testimony nor the pleadings, particularly the Namdars' malpractice claim dismissed on summary judgment, demonstrated that any of these other challenged facts—such as removal of Brad's LORS, reinstatement to the ACP, Brad's placement in a specific DISD school, and recovery of attorney fees from DISD—were purported terms upon which payment was conditioned rather than merely the outcome the Namdars alleged should have been achieved by the average reasonable attorneys. Even assuming the former, however, the jury's affirmative responses to question one (regarding the existence of a contract) and question three (regarding Shawn's and Brad's breach) necessarily included the jury's determination that any of these additional issues were

–12–

either terms of the agreement that GPM satisfied, or if not satisfied, not terms. In either event, the jury's answers in favor of GPM regarding the existence of a contract and its breach negate any potential harm with respect to question one.

We overrule the Namdars' first issue. Our disposition of this issue eliminates the need to address the Namdars' third issue, which challenged waiver of any error regarding instructions that the jury not answer the quantum meruit or sworn account questions if they answered the contract question in favor of GPM.

**B.     Submission of a question regarding an exception to the statute of frauds was immaterial but harmless**

In their second issue, the Namdars contend that because the trial court submitted question two regarding the "main purpose" exception to the "suretyship" provision of the statute of frauds,[4] it necessarily decided that with respect to Shawn, the oral contract at issue fell within the statute of frauds. The Namdars further argue that since no evidence supports the "main purpose" exception to Shawn's statute of frauds defense, judgment against Shawn for breach of contract cannot stand.

Promises by one person to answer for the debt or default of another fall within the statute of frauds and accordingly require a written agreement signed by the party to be charged. TEX. BUS. & COM. CODE § 26.01(a), (b)(2); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 827 (Tex. 2012) (quoting *Cooper Petroleum Co.*

---

[4] Question two asked the jury, "Did Shawn Namdar promise to be primarily responsible for paying the debt, if any, of Brad Namdar, and was Shawn Namdar's main purpose for that promise to gain a benefit for himself?" The jury answered "Yes."

*v. LaGloria Oil & Gas. Co.,* 436 S.W.2d 889, 895 (Tex.1969) ("Generally, a promise to pay another's debt must be in writing because 'the promisor has received no direct benefit from the transaction.'")). Promises to pay one's own debt, however, do not. *See Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 385 (Tex. 1962) (distinguishing between collateral promise to see that debt "was paid," from agreeing "to pay," and affirming judgment that agreement "to pay" fell outside the statute of frauds as a primary obligation, even though the obligation arose from goods or funds provided to partnership and third party rather than individual defendant); *see also Cruz,* 364 S.W.3d at 828–29 (evidence that insurer promised to pay for dehumidification services rendered to insured and did pay for those services could support jury's determination that insurer intended primary liability for debt).

The party asserting the statute of frauds as an affirmative defense bears the burden of raising it and providing evidence establishing its applicability. *See* TEX. R. CIV. P. 94; *Dynergy, Inc. v. Yates,* 422 S.W.3d 638, 642 (Tex. 2013). Generally, whether the statute governs a contract presents a question of law. *Dynergy, Inc.* 422 S.W.3d at 642. The jury, however, must resolve questions of fact regarding the statute's applicability. *Ropa Expl. Corp. v. Barash Energy, Ltd.*, No. 02-11-00258-CV, 2013 WL 2631164, at *9 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.). For instance, if a factual question renders application of the statute uncertain, such as when the existence of a contract is disputed, the proponent of the defense bears the burden of submitting a jury question regarding the disputed fact.

*Id.* Likewise, application of an exception to the statute of frauds, such as the "main purpose exception" submitted in question two, presents a question of fact. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Here, the trial court submitted question two asking the jury to determine whether an exception to the statute applied without asking whether the statute applied in the first place, even though the parties disputed whether Shawn was primarily liable or liable as a guarantor.[5]  Regardless, in his counterclaim Shawn admitted he contracted directly with GPM, rather than as a guarantor. Shawn pleaded:

- GPM offered to provide legal services to both he and Brad;
- He and Brad both requested that GPM take legal action;
- He and Brad were over-billed by GPM;
- GPM ignored Shawn's and Brad's instructions with respect to the legal services provided by GPM;
- A fiduciary relationship existed between Shawn and GPM (as well as between Brad and GPM), and GPM breached its fiduciary duty to Shawn;
- GPM breached its contract with both Shawn and Brad regarding its alleged promise to provide services for a fixed fee; and,
- Shawn, together with Brad, was a DTPA consumer of GPM's legal services.

---

[5] Moreover, to the extent the application of the statute presented a question of fact which should have been submitted to the jury, the Namdars' failure to submit any question seeking resolution of the statute's application or to object to the question drafted by the court, waived entitlement to the defense. *See Ropa Expl. Corp.,* 2013 WL 2631164, at \*9; *see also, Cruz,* 364 S.W.3d at 830 (lawyers are required to inform court of errors in the charge before formal submission to the jury).

These factual assertions constitute judicial admissions that Shawn was GPM's client and contracted directly for its services, thereby barring his later contradictory position that he was merely a surety or guarantor for fees incurred by Brad or on behalf of Dao. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (clear and unequivocal assertions of fact in live pleadings are formal judicial admissions which bar admitting party from later disputing admitted fact). As a matter of law, these admissions preclude Shawn's entitlement to a defense dependent on his role as a guarantor because Shawn admitted he contracted directly for GPM's services and was thus primarily liable. Question two, which addressed an exception to the defense, was therefore immaterial, although we find no harm in its submission. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 752 (1995) (no harmful error in submission of immaterial question unless submission confused or misled jury).

But even if we concluded a fact issue existed and looked past Shawn's admissions and the Namdars' failure to submit a question regarding application of the statute, we would reach the same conclusion. We find guidance in *Smith, Seckman, Reid, Inc. v. Metro National Corp.*, 836 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1992, no writ). In *Smith*, a contractor entered into a written agreement with a bowling alley tenant for repairs to the bowling alley after the landlord's agent said the landlord "would be paying" for the services. *Id.* at 821. During the construction, the landlord's agent met numerous times with the contractor and was

actively involved in the remodeling project. As construction progressed, the landlord provided three checks payable jointly to the tenant and the contractor, and in each check withheld the contractually authorized 10%. When both the tenant and the landlord defaulted, the contractor sued for breach. The trial court granted summary judgment on the landlord's statute of frauds defense, premised on the landlord's claim that its promise fell within the suretyship provision of the statute of frauds. The appellate court reversed, concluding a question of fact existed regarding the landlord's intent to be primarily liable or liable only as a guarantor. *Id.*

Here, no disputed fact exists regarding this issue. GPM did not enter into a written contract with only Brad dependent on Shawn's promises that he "would be paying" for the work. Instead, Shawn and GPM asserted that from inception Shawn and Brad were both clients, and both contracted for GPM's services. Indeed, in the initial meeting, GPM treated Shawn as a client by not asking him to leave with the students so as to preserve the attorney-client privilege. Nor did Shawn ever suggest to GPM during the representation that it should look to Brad for payment with Shawn's promise to pay triggered only if Brad failed to pay. Moreover, GPM's assertion of the same breach claim against both Brad and Shawn does not relegate Shawn's role to guarantor; it demonstrates GPM considered both Shawn and Brad primarily liable.

We also distinguish *Dynergy,* 422 S.W.3d at 638, in which the Court determined the defendant had demonstrated the statute of frauds applied. There, an

individual, Olis, contracted with lawyer Yates to defend him against securities fraud charges. In a written contract, Olis agreed to pay Yates's fees. Dynergy, Olis's corporate employer, also passed a board resolution that Olis was entitled to indemnification, and after Olis contracted with Yates, agreed in a letter to pay Yates for fees incurred by Olis through trial.[6] *Id.* at 640. Neither party asserted that Dynergy was ever a client or had directly engaged Yates on behalf of Olis, and neither party disputed that Olis contracted to pay his own fees, despite also claiming Dynergy would pay the fees. Instead, the parties disputed whether Dynergy promised to be primarily liable for Olis's legal fees despite Olis's written contract with Dynergy—which made no mention of Dynergy—or whether Dynergy merely guaranteed the fees in the event of Olis's default. *Dynegy, Inc.* 422 S.W.3d at 642 ("Dynegy orally promised to pay attorney fees associated with Olis's defense that, under the fee agreement, were Olis's obligation (i.e., Olis's debt)."). The supreme court determined Dynergy "established as a matter of law that the statute of frauds' suretyship provision initially applied to bar the claims against it" and therefore found that the burden to establish an exception to the statute of frauds shifted to the lawyer. *Id.* Because the lawyer failed to obtain a finding on the main purpose exception, he waived application of that exception. *Id.* at 640.

---

[6]After Olis was convicted of securities fraud, Dynergy's board determined Olis was not entitled to indemnification due to a lack of good faith required by the same resolution pursuant to which it agreed to indemnify him. *Dynergy, Inc.*, 422 S.W.3d at 640.

In contrast, both Shawn and Brad contemporaneously engaged GPM for work that involved not only Brad's employment, but also Dao and claims against the school principal. Our record also includes Shawn's admissions that he was GPM's client and allegations that GPM breached contractual and fiduciary duties Shawn contends were owed to him. Moreover, we have no written contract between GPM and Brad, or as in *Dynergy,* a later written promise by Shawn following an overt determination that he would indemnify Brad.

We conclude Shawn was not entitled to the statute of frauds as an affirmative defense because, as a matter of law, he was not a surety or guarantor of the debt owed to GPM. Any complaints regarding application of the exception to the statute submitted in question two are thus irrelevant. Accordingly, while the trial court erred in submitting question two, the error was harmless.

In reaching this conclusion, we reject the Namdars' argument that we imply that the trial court concluded the evidence warranted application of the statute, since, in so doing, we would ignore *City of Keller's* instructions to imply a proposed finding and conclusion only in support of a verdict.[7] We also reject the Namdars' contention, raised in its reply brief, that we are precluded from finding any error regarding the trial court's submission of question two because GPM did not raise a cross-issue regarding the trial court's implied conclusion that the statute of frauds

---

[7]*City of Keller v. Wilson,* 168 S.W.3d 802, 821–22 (Tex. 2005).

applied. We reject that argument because (1) we can affirm a judgment on any grounds, even those not raised by the parties, and our conclusion that an error occurred in this regard is in furtherance of affirming the judgment; (2) GPM objected to submission of question two, arguing no evidence supported Shawn's liability as a guarantor, and Shawn's admissions and other evidence instead demonstrated he contracted with GPM as a primary obligor; and, (3) GPM's briefing raised these same arguments.

We overrule the Namdars' second issue.

## C. The Namdars waived any error regarding summary judgment on their novation and accord and satisfaction defenses

In their second amended answers, the Namdars asserted "accord and compromise (novation)" as an affirmative defense with respect to GPM's agreement to accept $35,000 to fully discharge the total outstanding invoice. GPM moved for and obtained summary judgment dismissing the affirmative defense and the Namdars challenge that summary judgment ruling on appeal. GPM contends the Namdars abandoned these defenses, and alternatively, that summary judgment dismissing them was proper.

Shortly before trial, Brad and Shawn each filed their third amended answers which omitted novation as an affirmative defense, but included new defenses by which each asserted GPM failed to satisfy certain conditions precedent.[8] GPM filed

---

[8] GPM pleaded satisfaction of all conditions precedent.

special exceptions and moved to strike the third amended answers as untimely and because GPM asserted the amended answers included new, surprise defenses on the eve of trial. On the second day of trial, GPM argued its motion, and discussed its surprise and prejudice regarding the new allegation that GPM failed to satisfy conditions precedent. The trial court orally sustained the objection, and after trial, signed a written order in which it "noted its own Scheduling Order issued at the beginning of this case" and ruled, "after reviewing the Third Amended Answers finds that the answers, *to the extent* that they assert new, unmet conditions precedent, are stricken as untimely." (Emphasis added).

Rule 63 requires trial courts to allow amendments filed within seven days of trial, unless the opposing party demonstrates surprise or prejudice. TEX. R. CIV. P. 63; *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,* 884 S.W.2d 664, 665 (Tex. 1992). "We construe orders and judgments under the same rules of interpretation as those applied to other written instruments." *Payless Cashways, Inc. v. Hill*, 139 S.W.3d 793, 795 (Tex. App.—Dallas 2004, no pet.). Further, we will not read an order in a manner that renders any of its words meaningless, *Crosstex Energy Serv., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014), or which leads to absurd results. *Kourosh Hemyari v. Stephens,* 355 S.W.3d 623, 627 (Tex. 2011).

Although GPM moved to strike Brad and Shawn's third amended answers in their entirety, at the hearing on their motion, GPM argued prejudice and surprise only with respect to the Namdars' new defense that GPM allegedly failed to satisfy

conditions precedent. The trial court struck the amended answers *to the extent* they included these new defenses.

The Namdars contend the qualifying language means the trial court struck the third amended answers in their entirety, interpreting "to the extent" to mean "if." But that interpretation renders the qualifying phrase unnecessary. If the trial court had intended to strike the amended answers in their entirety, no qualification—"if," or "to the extent"—was necessary. The Namdars' proffered reading also creates ambiguity, leaving the parties (and this Court) to decide *if* the third amended answers were stricken or not—an absurd result with respect to an order entered following the court's verbal ruling sustaining GPM's argument that the new conditions precedent defense was prejudicial. Giving meaning to the trial court's inclusion of "to the extent" thus requires interpreting the order to mean the prejudicial new conditions precedent defense was stricken as untimely, but the third amended answers otherwise were not. Thus, at trial, the Namdars' third amended answers were their live pleadings. The third amended answer did not include the Namdars' accord and satisfaction or novation defenses.

Causes of action omitted from amended pleadings are effectively dismissed. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) ("[C]auses of action not contained in amended pleadings are effectively dismissed at the time the amended pleading is filed"). Thus, the right to complain on appeal regarding an erroneous ruling dismissing a claim is lost when the

aggrieved party files an amended pleading abandoning the claim upon which the trial court ruled. *Randolph v. Walker*, 29 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Dolenz v. All Saints Episcopal Hosp.*, 638 S.W.2d 141, 142 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) ("[A]mended pleading supplants the instrument amended and that which it amends is no longer proper to be considered part of the trial record" and abandoned claim therefore waives any error regarding dismissal of abandoned claim). In *Randolph, Dolenz, and Radelow-Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 560 (Tex. App.—Dallas 1987, writ ref'd n.r.e.), the trial courts granted an adverse, interlocutory judgment against appellants when it struck certain claims. *Randolph*, 29 S.W.3d at 275; *Dolenz*, 638 S.W.2d at 142. In each case, the trial court's dismissal was followed by an amended pleading in which the dismissed claim was omitted. *Randolph*, 29 S.W.3d at 275; *Dolenz*, 638 S.W.2d at 142; *Radelow-Gittens Real Prop. Mgmt.*, 735 S.W.2d at 560.

Similarly, on summary judgment motions, the trial court dismissed the Namdars' affirmative defenses. The Namdars, like the complaining party in these three cases, complain on appeal that the trial court erred in dismissing their affirmative defense. The holdings in *Randolph*, *Dolenz,* and *Radelow* mandate the conclusion here. By filing amended pleadings that excluded their "accord and compromise (novation)" defense, the Namdars waived any error the trial court may have committed in dismissing it. We overrule the Namdars' fifth issue.

–23–

**D.    GPM demonstrated segregation of its attorney fees was unnecessary**

In their sixth issue, the Namdars contend we must reverse GPM's judgment for more than $1.2 million in attorney fees because GPM failed to segregate fees not recoverable pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. The Namdars also contend the evidence supporting GPM's recovery was conclusory and thus insufficient to support the judgment. GPM argues that because the Namdars filed no counter-affidavit challenging GPM's section 18.001 affidavit, the Namdars waived any complaint regarding whether GPM's fees were reasonable and necessary; the Namdars' argument relies on "segregation by motion" rather than the controlling "segregate by claim" standard; and, segregation was not required for any of GPM's claims or its work defeating the Namdars' counterclaims and defenses. In the alternative, GPM asserts the trial court erred in denying its counterclaim seeking attorney fees pursuant to section 17.50(c) of the DTPA.

We review de novo the obligation to segregate fees, although the extent to which claims can be segregated poses a mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) ("how hard something was to discover and prove, how strongly it supported particular inferences or conclusions, how much difference it might make to the verdict, and a host of other details that include judgment and credibility questions about who had to do what and what it was worth" may render extent to which certain claims are subject to segregation a mixed question of law and fact). If the movant carries its burden

regarding whether segregation was required, only then do we examine the legal and factual sufficiency of the evidence supporting the award. *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 671 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

### 1. The Namdars' failure to file a section 18.001 counter-affidavit did not waive their challenge to GPM's failure to segregate fees

To establish the reasonableness of their fees, pursuant to civil practice and remedies code § 18.001(b), GPM filed and served prior to trial several affidavits signed by Mark Enoch. Mark was also designated as an expert, and his affidavits included his opinion that the services and fees described in the invoices attached to his affidavits were reasonable and necessary, as well as his testimony authenticating the invoices and demonstrating their admissibility as business records. The Namdars did not file any counter-affidavits and the trial court struck the experts they designated to testify regarding the necessity of and reasonableness of GPM's attorney fees. The Namdars cross-examined Mark extensively[9] regarding whether fees incurred to dismiss the Namdars' defenses and counterclaims were "caused by" and recoverable in furtherance of GPM's contract claim. Despite the cross-examination and arguments in closing that GPM had failed to segregate fees unrelated to its contract claim, the jury awarded the exact amount requested by GPM, $1,273,97.00 for work through trial, with additional amounts awarded for post-

---

[9] Although GPM objected to some of the cross-examination on relevance or form, it did not object that the examination was precluded by section 18.001.

judgment and appellate work. GPM contends that in failing to file counter-affidavits the Namdars waived their challenge to the reasonableness and necessity of GPM's fees.

A section 18.001 affidavit, uncontested by a counter-affidavit, provides admissible testimony supporting the reasonableness and necessity of the charges proven up by the affidavit, and upon assertion of a proper objection, prohibits controverting evidence on those issues. *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 491 (Tex. App.—Dallas 2016, pet. denied); *Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ). The rule seeks to obviate the need for expert testimony at trial to establish reasonableness and necessity. *Gunn v. McCoy*, 489 S.W.3d 75, 102 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018). "Although not conclusive as to the amount of damages, a proper section 18.001 affidavit constitutes legally sufficient evidence to support findings of fact as to reasonableness and necessity." *Id.*; *Hong v. Bennett*, 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.) ("An uncontroverted section 18.001(b) affidavit provides legally sufficient—but not conclusive—evidence to support a jury's finding that the amount charged for a service was reasonable and necessary."). Such an affidavit does not establish causation between the injury and the fees at issue, however, or establish as a matter of law entitlement to the requested fees. TEX. CIV. PRAC. & REM. CODE § 18.001 ("The affidavit is not evidence of and does not support a finding of the causation

element of the cause of action that is the basis for the civil action."); *McGibney v. Rauhauser*, 549 S.W.3d 816, 827 (Tex. App.—Fort Worth 2018, pet. denied).

Although we question the extent to which the Namdars' arguments and examination permissibly involved causation as opposed to the impermissible necessity of the services for which the fees were incurred, GPM's failure to object waived any argument that the section 18.001 affidavits precluded a challenge to whether GPM's fees were reasonable and necessary.[10]  We thus consider the Namdars' segregation arguments in this context.

## 2.     The duty to segregate

The Namdars contend we should reverse GPM's fee award because GPM's expert testimony offered to negate its obligation to segregate was conclusory and therefore no evidence.  The Namdars also assert that because GPM failed to demonstrate segregation was unnecessary, we must examine each legal task, over the span of two years, to determine which fees GPM was required to segregate.  And, the Namdars contend that because GPM failed to segregate fees incurred with respect to numerous motions for sanctions; work the Namdars contend was pro bono; GPM's section 17.50(c) DTPA counterclaim; and, defending the Namdars'

---

[10] Similarly, GPM's failure to object that the Namdars' arguments at trial regarding the reasonableness of GPM's fees violated the trial court's limine order waived any argument premised on the order in limine. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 91 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Because a trial court's ruling on a motion in limine preserves nothing for review, a party must object at trial when the testimony is offered to preserve error for appellate review.").

successful mandamus proceeding, we must reverse the fee award. GPM contends its evidence satisfied their burden to demonstrate segregation was not required.

A party seeking to recover attorney fees must demonstrate that the fees were reasonable and necessary, a burden which includes showing that the fees were incurred with respect to a claim that provides for the recovery of fees. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex.1991). Thus, fees incurred in pursuing claims for which fees are not recoverable require segregation from fees incurred with respect to claims for which fees are recoverable, unless an exception excuses segregation. *Chapa*, 212 S.W.3d 299, 312–13; *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 316 (Tex. App.—Dallas 2006, no pet.). Fees incurred to overcome "any and all affirmative defenses" regarding a fee-sustaining claim are an exception to the requirement of segregation. *Chapa*, 212 S.W.3d at 314. Likewise, fees incurred to overcome counterclaims intended to defeat a full recovery on the fee-sustaining claim require no segregation. *Varner v. Cardenas,* 218 S.W.3d 68, 69–70 (Tex. 2007) (per curiam). Thus, instances in which "a defendant alleges the same theory as both an affirmative defense and a counterclaim in an effort to reduce or eliminate the plaintiff's recovery on a contract claim," require no segregation. *Transcon. Realty Inv., Inc. v. McGuire, Craddock, Strother & Hale, P.C.*, No. 05-09-00884-CV, 2011 WL 1493985, at *5 (Tex. App.—Dallas Apr. 20, 2011, pet. denied) (mem. op.). Similarly, if work served the prosecution of a claim on which fees are recoverable as well as claims on which fees are not

recoverable, segregation is not required. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (exception to segregation requirement "exists only when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible"); *Chapa*, 212 S.W.3d at 312–13 ("To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service."); *Emerson Elec. Co.,* 201 S.W.3d at 316 ("A recognized exception to this duty to segregate arises when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.").

GPM asserted a breach of contract claim, as well as claims for sworn account, promissory estoppel, and quantum meruit. The Namdars pleaded a multitude of affirmative defenses, and also filed counterclaims against GPM and the Individual Defendants for breach of fiduciary duty, legal malpractice, breach of contract, negligent misrepresentation, and violations of the DTPA.[11] Each counterclaim was premised on the quality, outcome of, or representations or omissions regarding the legal services for which GPM sought payment, and with the exception of the statute of frauds defense, each was dismissed on summary judgment prior to trial. In response to the Namdars' DTPA claim, GPM also asserted a section 17.50(c) DTPA

---

[11] TEX. BUS. & COM. CODE §17.46 et seq.

counterclaim, contending the Namdars' DTPA claim was groundless, brought in bad faith, or brought for purposes of harassment.[12]

Trial was bifurcated, with liability established prior to submission of any evidence regarding GPM's entitlement to attorney fees. During the second phase of the trial, Mark Enoch testified that with the exception of $9,962 performed solely for the benefit of the Individual Defendants, all of the legal work performed by GPM was necessary for GPM to recover its debt, including all work necessary to obtain judgment on the Namdars' many affirmative defenses and counterclaims. For instance, when asked if GPM had to "completely beat defendants' counterclaims and affirmative defenses to fully recover on its contract claim," Mark testified without objection

> Yes. Had we not defeated each and every counterclaim and third-party petition, and had we not defeated each affirmative defense, we could not have fully recovered.

Mark also testified that work with respect to the Namdars' mandamus proceeding was necessary for GPM to prevail on its contract claim by defeating the Namdars' DTPA counterclaim and its affirmative defenses.

No testimony apportioned any work or fees necessary only to overcome any affirmative defenses, counterclaims, or prove GPM's section 17.50(c) counterclaim, although the invoices submitted with Mark's section 18.001 affidavit included time

---

[12] GPM obtained summary judgment dismissing the Namdar's DTPA claim, premised on arguments that the claim was barred by the professional services exclusion or was an impermissibly fractured malpractice claim.

–31–

entries describing some work related to the section 17.50(c) counterclaim. The Namdars cross-examined Mark extensively regarding the reasonableness and necessity of GPM's fees, and also challenged whether specific work was performed in furtherance of GPM's contract claim. Because their expert had been struck, they offered no expert testimony of their own.

Following the jury verdict awarding all fees requested, GPM filed a motion for judgment on the verdict, and in addition to the jury's award, requested that the trial court enter judgment in its favor on its section 17.50(c) counterclaim. In its motion for judgment, GPM asserted, without evidentiary support, that the trial court should award $600,000 as the amount reasonably and necessarily incurred in defending the Namdars' DTPA claim. In its amended final judgment, the trial court awarded all fees included in the jury verdict, but expressly denied GPM's request for attorney fees pursuant to the DTPA section 17.50(c) claim.

### i.    Fees incurred with respect to GPM's alternative claims

Sworn account and quantum meruit claims are merely variants of a contract claim, and fees are recoverable on each. TEX. CIV. PRAC. & REM. CODE § 38.001(7), (8). Because each claim rests on essentially the same legal theory, the facts and proof necessary to establish each are close where not identical. Additionally, because all claims asserted by GPM arose out of a single transaction, we conclude any work necessary to advance the quantum meruit and sworn account claims also advanced the contract claim thereby negating any segregation obligation. *See*

*Skyline Commercial, Inc. v. ISC Acquisition Corp.*, No. 05-17-00028-CV, 2018 WL 4039863, at *10 (Tex. App.—Dallas Aug. 23, 2018, pet. denied) (mem. op.) (no segregation required where plaintiff prevailed on quantum meruit, but also asserted claims for breach of contract, unjust enrichment and a prompt pay violation); *MeadWestvaco Corp. v. Way Serv., Ltd.*, No. 09-15-00014-CV, 2016 WL 421303, at *10 (Tex. App.—Beaumont Feb. 4, 2016, no pet.) (mem. op.) (concluding segregation unnecessary for work on quantum meruit and unjust enrichment claims where fees were recovered for breach of contract).

Further, although the promissory estoppel claim falls under the same legal theory as the quantum meruit and sworn account claims, we also observe that GPM's promissory estoppel claim was asserted defensively, in an amended pleading after Shawn alleged the statute of frauds barred GPM's recovery. We thus treat the claim as a defense to the Namdars' affirmative defenses, *see Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 654 (Tex. App.—Dallas 2015, no pet.) ("[P]romissory estoppel may be used to bar the application of the statute of frauds and allow enforcement of an otherwise unenforceable oral promise"), and view work necessary to further the promissory estoppel claim as necessary to defeat the Namdars' affirmative defenses, which as discussed below, are recoverable. Thus, GPM had no obligation to segregate any fees incurred for work in furtherance of its own claims.

### ii. Fees incurred in overcoming the Namdars' defenses and counterclaims

All of the Namdars' defenses and counterclaims arose from the same transaction underlying GPM's contract claim and sought to defeat the existence of a contract, its performance, the damages caused by the alleged breach, or conditions necessary for recovery on such a claim. Moreover, none of the counterclaims rested on any legal theory not also raised by an affirmative defense. Thus, all work necessary to defeat each of the Namdars' many affirmative defenses and counterclaims was necessary for GPM to prevail on its contract claim. *Varner,* 218 S.W.3d at 69 (work to defeat counterclaims premised on the same transaction at issue in the claim which supported fees and by which defendants sought to reduce recoverable amount on claim for which fees were recoverable, required no segregation); *Hagan v. Pennington*, No. 05-18-00010-CV, 2019 WL 2521719, at *9 (Tex. App.—Dallas June 19, 2019, no pet.) (mem. op.) ("When a defendant alleges the same theory as both an affirmative defense and a counterclaim in order to reduce or eliminate the plaintiff's recovery on a contract claim, the plaintiff does not need to segregate fees."); *Lindley v. McKnight*, 349 S.W.3d 113, 135–36 (Tex. App.—Fort Worth 2011, no pet.) (segregation not required where defense of claims for which fees were not recoverable were predicated on same factual and legal theories as declaratory judgment claim, defense of which supported fee recovery). We

therefore conclude segregation of fees incurred in overcoming the Namdars' affirmative defenses and counterclaims was unnecessary.

And with respect to both its determination regarding GPM's damages for breach and the reasonable amount of GPM's fees, the jury necessarily rejected the Namdars' contention that GPM agreed to provide any services pro bono. Thus no segregation obligation existed regarding any work related to Dao.

### iii. Discovery motions, sanctions motions, and defending a mandamus proceeding

The test with respect to discovery efforts does not differ from any other discrete inquiry regarding segregation. Nonetheless, the Namdars expressly challenge GPM's failure to segregate work regarding multiple motions intended to enforce the Namdars' discovery obligations and obtain sanctions, GPM's defense of the Namdars' mandamus proceeding, and GPM's efforts regarding its own DTPA counterclaim. These efforts, like those described above, were either necessary for GPM to prevail on its contract claim or to defeat the Namdars' defenses and claims.

For instance, efforts to defeat the Namdars' mandamus proceeding—which arose from GPM's efforts to obtain tax returns from Brad and Shawn—supported GPM's efforts to defeat the Namdars' DTPA counterclaim in which the Namdars asserted GPM's fees were exorbitant and unreasonable in comparison with Brad's income, an assertion made despite Shawn's business having made the only payments GPM received. As work performed to defeat the Namdars' counterclaim which, in

turn, was necessary for GPM to prevail on its contract claim, fees for work regarding the mandamus did not require segregation, even though GPM did not prevail on the mandamus. *Chapa*, 212 S.W.3d at 314 (opposing party who raises affirmative defenses or counterclaims which a contract claimant must overcome to prevail "should not be allowed to suggest to the jury that overcoming those defenses was unnecessary.").

We also conclude no segregation obligation attached to fees incurred for efforts to obtain discovery and discovery sanctions in furtherance of defeating a counterclaim premised on the same transaction as a contract claim, particularly in light of the opposing party's dishonest and disingenuous efforts to impede such discovery. *See State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 105 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) (segregation not required where discovery "equally applied" to contract and bad faith claims). Although fee awards presented to this Court in virtually every appeal speak to the expense inherent in all litigation, when both sides comply with their respective obligations under the rules, fees do not often balloon far beyond the scope of the amount in dispute as occurred here. In this case, GPM explained its multiple motions for sanctions and numerous other discovery motions, which resulted in at least 25 pre-trial hearings, were necessitated by the Namdars' or their witnesses':

- Perjury;
- Refusal to admit requests for admissions proven at trial by GPM;

- Evasiveness during depositions;[13]
- Refusal to make witnesses available for depositions;
- Intentionally hiding documents, including emails and texts, despite orders compelling the production of those documents;
- Failure to produce all requested documents, and failure to produce some documents within the time required by the court's orders;
- Threats intended to coerce a settlement, including the Namdars' counsel's violation of disciplinary rules.[14]

GPM was also forced to serve third-party subpoenas to obtain documents Brad refused to produce, and depose non-party witnesses to disprove Brad's claims or overcome his refusal to admit requests for admissions.

Moreover, we will not tacitly encourage litigants who engage in such behavior, even if the discovery and sanctions requests are ultimately unsuccessful. *See, e.g., Baxter v. Crown Petroleum Partners 90-A*, No. 3:97-CV-2371-P, 2000 WL 269747, at *4 (N.D. Tex. Mar. 10, 2000) ("A party cannot contest every issue and every claim and then complain that the fees should have been less because plaintiff could have tried the case with less resources and fewer hours."). Nonetheless, GPM succeeded in excluding several categories of documents, as well as the testimony of several witnesses the Namdars relied on for their contentions regarding the terms of the agreement, the quality of GPM's services and its promises regarding the outcome

---

[13] For example, as evidenced in video clips played for the jury, in addition to other evasive tactics, Brad demonstrated a zealous unwillingness throughout his deposition to answer a direct question directly. After viewing video clips from Brad's deposition during one of the pre-trial hearings, the trial judge described Brad as more evasive than any witness he had seen in twenty years.

[14] In an order granting one of GPM's motions for sanctions, the trial court expressly found the Namdars' counsel violated rule 4.04 of the Texas Disciplinary Rules of Professional Conduct.

of the representation, and every expert the Namdars designated. Indeed, GPM's efforts regarding the Namdars' discovery abuses were largely successful.[15] Having concluded GPM was required to overcome all of the Namdars' affirmative defenses and counterclaims to prevail on its contract claim, we find nothing to suggest that any discovery efforts, including those enumerated above, served some other purpose or required segregation.

### iv. Work in furtherance of GPM's section 17.50(c) DTPA counterclaim

GPM's work regarding its section 17.50(c) DTPA claim for attorney fees served equally to unsuccessfully prove entitlement to fees, as to defeat the Namdars' section 17.46 DTPA claim. Establishing the Namdars' DTPA claim was barred by the professional services exclusion or presented an impermissible fracturing of a malpractice claim—defenses known to the Namdars' attorney when he filed the claim—required no meaningfully different proof or work than demonstrating the claim was also groundless in fact or law. Likewise, the efforts and evidence by which GPM demonstrated the reasonableness of its fees on such a small contract claim, including defending the Namdars' DTPA claim and related affirmative defenses, were the same as those necessary to prove that the Namdars intended to

---

[15] The sanctions at issue in the mandamus proceeding were vacated based on the clarity, timing of the production required, and the sanctions' relation to the offensive conduct, rather than because the trial court abused its discretion with respect to compelling the tax returns. *See In re Namdarkhan*, 05-16-01410-CV, 2017 WL 1075640, at *3 (Tex. App.—Dallas Mar. 21, 2017, no pet.) (trial court abused discretion in awarding sanctions because Brad did not fail to comply with a verbal order regarding timing of tax return production, and because trial court did not consider imposition of lesser sanctions as to Shawn's conduct before excluding evidence).

render GPM's prosecution of the contract claim so expensive that GPM would abandon the claim in favor of a settlement and thus the same as proving the Namdars' bad faith assertion of the DTPA claim. Although arguments supporting the 17.50(c) claim are framed differently than a strict defense of the Namdars' section 17.46 DTPA claim, the 17.50(c) claim arises out of the 17.46 claim, and at least in this instance, depends on the same facts. We thus conclude that the fees incurred in furtherance of GPM's section 17.50(c) DTPA claim also served to defeat the Namdars' section 17.46 DTPA claim, and thus rendered segregation unnecessary. *See Flint & Associates v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 625 (Tex. App.—Dallas 1987, writ denied) (affirming fees awarded on contract claim, which included assertion of entitlement to recovery under DTPA section 17.50 for bad faith counterclaim).

Finally, absent any support in the record to the contrary, we presume the jury followed the trial court's instructions. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). The jury here was instructed to award only fees that were reasonable and necessary for recovery on the claims submitted in the first phase of the trial—GPM's claims and the Namdars' statute of frauds defense.[16] Whether

---

[16] With respect to the question regarding what constituted a reasonable fee for GPM's legal services, the jury was instructed as follows:

> You are instructed that this question only applies to reasonable and necessary attorneys [sic] fees for services incurred, if any, in pursuing the claims addressed in the Court's original charge. You are instructed that this question does not encompass reasonable and necessary attorneys [sic] fees incurred, if any, in defending against claims brought by the Defendants against any other parties, unless those services were also necessary for pursuing the claims

the Namdars' DTPA claim was filed in bad faith, for harassment, or groundless was not submitted to the jury, and thus neither was GPM's entitlement to additional fees pursuant to 17.50(c). Because the jury decided all fees described by Mark and evidenced in the exhibits—which included time for work on the section 17.50(c) claim—were reasonably and necessarily incurred by GPM to prevail on its contract claim, the jury necessarily decided any factual issues related to whether segregation was possible, in favor of GPM.

We conclude all work in furtherance of each of GPM's claims, its defense of the Namdars' counterclaims and affirmative defenses, and its own counterclaim were dependent on the same facts and legal theories. Further, we also conclude work necessary to prevail on the Namdars' affirmative defenses and counterclaims, as well as GPM's DTPA counterclaim, necessarily also served the contract claim such that segregation was not necessary. Finally, we conclude that the jury determined segregation was not possible for the fees submitted in support of the contract claim.

c. **Factual sufficiency of evidence supporting reasonableness**

The Namdars contend Mark's opinion—that with the exception of $9,962, all fees incurred by GPM were necessary for it to prevail on its contract claim and defeat

---

addressed in the Court's original charge, including overcoming affirmative defenses to those affirmative claims referenced in the Court's original charge.

the Namdars' affirmative defenses and counterclaims—was conclusory.[17] We disagree.

In conducting a factual sufficiency review, we consider all evidence, not just the evidence supporting the jury's determination. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). We will overturn only a finding "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Spethmann v. Anderson*, 171 S.W.3d 680, 688 (Tex. App.—Dallas 2005, no pet.).

First, as noted above, several section 18.001 affidavits prepared by Mark and filed prior to trial were admitted without objection. In each affidavit, Mark testified all of GPM's fees were reasonable and necessary, and he proved up detailed GPM invoices attached to each affidavit, as business records. While none of those affidavits provided any detail as to the basis for Mark's opinion, the Namdars filed no counter-affidavits nor objected to any affidavit testimony as conclusory. The affidavits alone, therefore, provided legally sufficient evidence supporting the reasonableness and necessity of GPM's legal fees admitted through those affidavits. *Gunn,* 489 S.W.3d at 102; *Hong,* 209 S.W.3d at 800.

---

[17] We reject the Namdars' challenge to the expert testimony to the extent it implies the opinion was necessary for and admitted to demonstrate segregation was unnecessary. Expert opinions are admissible only to assist the jury, a predicate absent when the trial court determines a question of law, *Greenberg Traurig of New York, P.C.,* 161 S.W.3d at 91, and we accordingly do not rely on the opinion in our de novo review. Moreover, we have no indication that the trial judge admitted the testimony for an improper purpose, but rather, as indicated by the wording of the question submitted regarding attorney fees, allowed the opinion on the mixed question of law and fact regarding the "extent to which certain claims are subject to segregation." *See Chapa,* 212 S.W.3d at 313-314.

Moreover, Mark's testimony at trial was significantly more detailed and substantial than what was included in each of the numerous affidavits, and provided ample factual support that GPM's fees incurred in defeating the Namdars' defenses and claims were necessary to prevail on its contract claim and could not be segregated from those fees. On direct examination, Mark explained he relied on the *Andersen*[18] factors, the detailed narrative descriptions of the work, and the time entries which reflected time to the tenth of an hour; billing judgment in writing down, writing off, or choosing not to bill certain time; and described the process for preparing for hearings, depositions, and trial in opining that the fees were reasonable and necessary. He also testified that the case had been "very, very active," and had necessitated more pre-trial hearings than he had seen in any other case. Mark described GPM's efforts to obtain summary judgment on the Namdars' claims and defenses, including responding to the Namdars' questions about the timing of one of GPM's summary judgment motions. He explained GPM had sought leave to file beyond the scheduling order deadline because the Namdars persisted in asserting their affirmative defenses, which depended on the same theories as the counterclaims, even after GPM had obtained judgment on the counterclaims. Mark also testified about GPM's successful efforts to strike the Namdars' "five or six" experts, including their attorney's fee expert. In addition to this evidence supporting

---

[18] *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997).

the reasonableness of the fees, Mark also testified GPM had to defend against 68 claims—which we interpret as claims and defenses—asserted by the Namdars, some of which were filed very late in the proceedings and forced a great deal of work in a short period time. Mark stated unequivocally and without objection that GPM's fees in the amount of $1,287,757.56 were all necessary for GPM to prove and recover on its contract claim, an opinion supported by his prior testimony detailing all of the work required to overcome the Namdars' defenses and counterclaims. We conclude factually sufficient evidence supported the jury's award encompassing all fees requested.

Finally, in light of Mark's testimony described above, we reject the Namdars' argument that Mark's testimony about fees incurred by the Namdars as evidence supporting the reasonableness of GPM's fees, caused any harm. *See Bufkin v. Bufkin*, 259 S.W.3d 343, 352 (Tex. App.—Dallas 2008, pet. denied). We overrule the Namdars' sixth and seventh issues.

Based on our disposition above, we need not resolve GPM's cross-appeal which asserts, in the alternative to a resolution in GPM's favor of the Namdars' issues challenging the fee awards that the trial court erred in failing to award GPM fees pursuant to its section 17.50(c) DTPA claim.

We affirm the trial court's judgment.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

180802F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HOSSEIN S. NAMDARKHAN AND
BARDIA NAMDARKHAN, Appellant

No. 05-18-00802-CV     V.

GLAST, PHILLIPS & MURRAY, P.C.,
MARK C. ENOCH, MARK C. ENOCH,
PC, AND MATTHEW ENOCH, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-00853.
Opinion delivered by Chief Justice Burns.
Justices Molberg and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees GLAST, PHILLIPS & MURRAY, P.C., MARK C.
ENOCH, MARK C. ENOCH, PC, AND MATTHEW ENOCH recover their costs of this appeal
from appellants HOSSEIN S. NAMDARKHAN AND BARDIA NAMDARKHAN.

Judgment entered April 24, 2020.